

FILED
MAR - 5 2013
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DAVID M. DORSEN                                                )
3501 Davis Street, N.W.                                   )
Washington, DC 20007                                   )

            **Plaintiff**

Case: 1:13-cv-00288
Assigned To : Howell, Beryl A.
Assign. Date : 3/5/2013
Description: FOIA/Privacy Act

          **v.**

SECURITIES & EXCHANGE COMMISSION
Station Place                                                     )
100 F Street, NE                                              )
Washington, DC 20549                                 )
                                )
          **Defendant**         )
_____)

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act, 5 U.S.C. § 552, for injunctive and other appropriate relief and seeking the disclosure and release of agency records improperly withheld from plaintiff by defendant Securities and Exchange Commission (SEC). It is a proceeding in equity.

### Jurisdiction and Venue

2.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

3.     Plaintiff David M. Dorsen is an attorney at law who is the attorney for Michael Lauer, who has been a defendant in an enforcement action brought against him on July 8, 2003. Mr. Dorsen is pursuing this action on behalf of Mr. Lauer with his consent and

as a public service to increase the much-needed accountability and transparency of defendant SEC.

4.       Defendant SEC is an independent agency of the United States Government.

### Summary of Relevant Background

5.       On July 8, 2003, the SEC's Miami Office filed suit against Mr. Lauer and others without having sought or obtained the right to conduct a formal investigation and without having sent Mr. Lauer a Wells Notice, after Mr. Lauer exonerated himself in a major FBI sting operation known as "Bermuda Short." *Securities & Exchange Comm'n v. Michael Lauer et al.*, 03 Civ. 80612-ZLOCH, S.D. Fla. At the time suit was filed Mr. Lauer was a prominent hedge fund asset manager in New York City and Connecticut, where he lived and worked. Through Lancer Management Group I, LLC, and Lancer Management Group II, LLC (collectively Lancer), Mr. Lauer managed three hedge funds, two of which were entirely offshore, with net assets of over $1 billion, after returning approximately $600 million to investor. His net worth, presented in a sworn financial statement, was over $100 million Mr. Lauer's connections with Florida were nonexistent or virtually nonexistent. At the time Mr. Lauer had an enviable reputation as a result of over twenty years in finance. The complaint charged Mr. Lauer with inflating the net asset value of the assets owned by the Funds in order to increase his commissions based on the Funds' assets and profitability.

6.       At an ex parte TRO hearing on July 10, 2003, attended only by SEC representatives and the court, Judge William J. Zloch, entered a TRO that froze every dollar possessed by Mr. Lauer and appointed a receiver for Lancer and the Hedge Funds. On July 11, 2003, the Receiver, a partner at Hunton & Williams, raided the offices of Lancer and shuttered and destroyed them forever. Neither Mr. Lauer nor the innocent and summarily fired employees had an opportunity to be heard.

7.     As a result of the initial freeze or and repeated efforts on Mr. Lauer's part to have the order relaxed to provide sufficient funds to retain counsel, Mr. Lauer was forced to represent himself pro se.  Throughout his five years in the district court he never was represented by counsel except for pro hac vice efforts to relax the freeze order or to defend himself from a contempt charge based on his alleged discovery deficiencies and violations of the freeze order.

8.     In the spring of 2004, Mr. Lauer filed a motion to require the recusal of Judge Zloch for having prejudged the case by telling Mr. Lauer at a hearing on his motion to relax the freeze that he would be treated no better than the people he defrauded.  After rejecting Mr. Lauer's motion without referring it to an independent judge, Judge Zloch decided three pending motions adverse to Mr. Lauer, including a motion to transfer the case to New York. Years later Mr. Lauer learned that the SEC's opposition involved violation of his attorney-client privilege and making false statement to the court about the purported availability of witnesses who resided in Florida.  Judge Zloch then recused himself and, it appears, Judge Zloch handpicked his successor, Judge Kenneth Marra.

9.     Judge Marra continued the pattern of Judge Zloch, holding him in contempt for alleged discovery delinquencies in the face of enormous discovery demands, which he had to satisfy pro se and without the means to access his and Lancer's records.  From the very start of the case, Mr. Lauer had cooperated fully with the SEC, including turning over his personal records, sitting for interviews, and then testifying for four days of depositions at which he answered all questions.  The Receiver had transported the records to Miami in order that his attorney, another partner at Hunton & Williams, dozens of associates, paralegals, and accountants, along with SEC, reviewed them.  As punishment, Judge Marra ordered, *inter*

*alia*, that Mr. Lauer could neither testify on his own behalf nor submit an affidavit in connection with any motion for summary judgment.

10.     Four years later plaintiff SEC moved for summary judgment, without presenting a single document that incriminated Mr. Lauer, such as a memo, email, letter, taped telephone call or the like, and without including an affidavit of an expert witness to challenge the asset valuations that had been accepted by PriceWaterhouseCoopers and others.

11.     In 2008 the Department of Justice indicted Mr. Lauer and others on virtually the same charges.  Mr. Lauer applied to Judge Marra to obtain access to his frozen funds in order to defend himself on the criminal charge.  Judge Marra refused.  As a result, a public defender with no experience with hedge funds represented Mr. Lauer in the complex criminal case against a team of experienced DOJ prosecutors.

12.     In 2009 Judge Marra entered summary judgment against Mr. Lauer.  His opinion consisted of *scanning* the SEC's summary judgment, typos and all, while making a few cosmetic changes.  Following a hearing on disgorgement at which the SEC presented only evidence of Mr. Lauer's gross receipts during the alleged fraud period, Judge Marra accepted every dollar as Mr. Lauer's unjust enrichment or ill-gotten gains and awarded the SEC $43 million.  Mr. Lauer presented uncontradicted evidence, including statements by the SEC, that most, if not all, of the $43 million had been earned before the period of the alleged fraud or was the reimbursement of expenses.  Judge Marra also awarded the SEC $19 million dollars in prejudgment on the funds of Mr. Lauer that he had frozen and to which he had continually denied Mr. Lauer access.

13.     Mr. Lauer filed a notice of appeal from the $62 million judgment to the United States Court of Appeal for the Eleventh Circuit and filed a brief pro se in that court.

14.    In 2011 Mr. Lauer and a co-defendant went to trial in the criminal case. Following the prosecution's case, Mr. Lauer and his attorney decided they had nothing to rebut and called no substantive witnesses, including Mr. Lauer.  The jury acquitted and his codefendant.

15.    Plaintiff agreed to represent him three weeks before oral argument in the Eleventh Circuit.  At the argument held on February 2, 2012, the Court requested plaintiff to file a supplemental brief within thirty days and, at its request, the SEC would file a brief in opposition thirty days later.  Plaintiff complied.  The SEC filed a motion for a two month extension on the ground, inter alia, that Mr. Lauer's post-argument brief raised new issues.

16.    On April 19, 2012, the Court of Appeals affirmed the grant of summary judgment, in a cursory, unsigned, unpublished opinion that failed to respond to many of the issues raised in Mr. Lauer initial brief and responded to none of the new arguments raised in his post-argument brief, including ones relating to the standard employed by Judge Marra, the evidence presented by the SEC, the failure of Judge Marra to consider any of Mr. Lauer's detailed evidence, the inappropriate standard for awarding disgorgement, and awarding prejudgment interest on his frozen assets.  Mr. Lauer filed a petition for rehearing or rehearing en banc, which was denied.

17.    Mr. Lauer, represented by plaintiff, filed a petition for certiorari.  The Solicitor General waived the right to reply.  A supplemental brief in the Supreme Court pointed out that no court had yet considered the substantive arguments contained in Mr. Lauer's post-argument brief.  On October 28, 2012, the Supreme Court denied Mr. Lauer's petition for certiorari.

18.    On January __, 2013, Mr. Lauer *pro se* filed motions in the United States District Court for the Southern District of Florida seeking to vacate the judgment and/or

5

dismiss the complaint in *SEC v. Lauer, supra*.  Mr. Dorsen has filed a motion for leave to represent Mr. Lauer *pro hac vice* in connection with the motions.

### FOIA Request

18.     As narrowed during the administrative proceeding, the FOIA request in this case is for documents that reflect the decision and the date of the decision of the SEC Commission or any individual (or Duty) Commissioner to authorize the filing of *Securities & Exchange Comm'n v. Michael Lauer et al.*, 03 Civ. 80612, S.D. Fla.

### Plaintiff's FOIA Request and Defendant's Failure to Timely Comply

19.     On or about September 5, 2012, the SEC acknowledged receipt of plaintiff's FOIA request to the SEC that sought, *inter alia*, documents that reflected any approval or authorization by the SEC Commission or any individual or Duty Commissioner to file a complaint in *SEC v. Lauer*, *supra*.  On or about December 5, 2012, the SEC denied plaintiff's FOIA request.

20.     On or about December 17, 2012, the SEC acknowledged receipt of plaintiff's appeal, which limited his FOIA request to the documents sought in this action.  On two occasions plaintiff communicated with the SEC to learn when the SEC would decide his appeal.  The SEC has failed and refused to decide the appeal or provide plaintiff with the date on which it would decide the appeal.

21.     The SEC has neither decided plaintiff's appeal nor provided the records requested by plaintiff in his FOIA request, notwithstanding the FOIA's requirement of an agency response within twenty working days.

22.     Plaintiff has exhausted the applicable administrative remedies with respect to his FOIA request.

23.     The SEC has wrongfully withheld the requested records from plaintiff.

## Requested Relief

WHEREFORE, plaintiff prays that this Court:

  A.  Order defendant to disclose the requested records in their entireties and make

copies available to plaintiff;

  B.  Provide for expedited proceedings in this action;

  C.  Award plaintiff his costs and reasonable attorneys' fees incurred in this action;

and

  D.  Grant such other relief as this Court may deem just and proper.

        Respectfully submitted,

        DAVID M. DORSEN
        D.C. Bar No. 199653

        2900 K Street, N.W.
        Suite 500
        Washington, DC 20007
        202 204-3706
        Dorsen35@aol.com