**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ORIGINAL

DAVID M. DORSEN,  )
 )
  Plaintiff,  )
 )
  v.  ) C.A. No. 1:13-cv-00288
 )
SECURITIES & EXCHANGE COMMISSION,  )
 )
  Defendant.  )
_____ )

## MOTION FOR ATTORNEYS' FEES

Petitioner respectfully files this petition for attorneys' fees pursuant to the Freedom of

Information Act, 5 U.S.C. § 552(a)(4)(E)(ii)(II), and Rule 54(d) of the Federal Rules of Civil

Procedure. Petitioner filed a FOIA request with the SEC on or about September 5, 2012, on

behalf of Michael Lauer, that included as item (2), "documents that describe or reflect the

collective vote of the Commissioners of the Securities and Exchange Commission that

authorized both a formal investigation of Michael Lauer and the commencement of a civil

action against Michael Lauer." On November 5, 2012, the SEC rejected the request in its

entirety under Exemption 5, stating, "documents reflecting Commission votes to file civil

actions are protected from disclosure by the attorney-work-product, deliberative process and/or

attorney-client privileges, since they were prepared in anticipation of litigation, form an

integral part of the predecisional process, and contain advice given by the SEC or senior staff

by the SEC's attorneys."

On November 13, 2012, petitioner appealed the denial of item (2). Exhibit A to

Declaration of David M. Dorsen filed with Motion for Summary Judgment. Petitioner twice



communicated by letter or email with the SEC to ascertain the status of the appeal. The SEC would not provide petitioner with information when the appeal would be decided. On March 5, 2013, three months after the SEC should have decided the appeal, the undersigned attorney for Michael Lauer filed suit on his behalf to obtain the documents that were the subject of the appeal to the SEC. Only then did the SEC produce the long-sought documents. With a covering letter dated March 13, 2013, the SEC produced two documents. Exhibit B. Following discussions with an SEC attorney, the SEC supplied a copy of one of the produced documents that provided additional information on March 28. Exhibit C. Eligibility for attorneys' fees is satisfied when (1) the plaintiff files a FOIA request with the agency; (2) the agency fails to disclose the requested records; (3) the plaintiff sues; and (4) the agency voluntarily or unilaterally changes its position. *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 610 F.3d 747, 749 (D.C. Cir. 2010). Eligibility for an award is clear.

### Description of Documents Produced

Sought from the SEC and produced by the SEC were documents that shed light on the commencement of a formal investigation and a civil action on July 8, 2003 in Miami, Florida, against Michael Lauer. The SEC also named as defendants Lancer Management I and II, the two hedge-fund management companies that Mr. Lauer principally owned and ran. The SEC named the three hedge funds managed by Lancer and Mr. Lauer as "relief defendants." The Miami office of the SEC had commenced an informal investigation in March 2003. Mr. Lauer, a resident of Connecticut with his office in New York, never received a Wells Notice or any notice that the SEC authorized a formal investigation.

The SEC produced two documents in its initial production. One was an order dated July 7, 2003, one day before the complaint was filed, by the Secretary of the SEC Commission that authorized the filing of a private or formal investigation. The second document, redacted

in substantial part, was a Request for Commission Action. As produced, the latter document showed that the Miami staff requested authorization to file suit against Lauer and Lancer Management I and II. The four voting Commissioners, who acted seriatim, purportedly did so on either July 3 or 7, 2003, and all purported to approve the staff's request. Two of the Commissioners signed for themselves and two were signed by non-Commissioners. After further discussion between the undersigned and the SEC attorney assigned to the case, the SEC unredacted another portion of the Request for Commissioner Action, which showed that the Commission authorization permitted naming as relief defendants the three hedge funds that Mr. Lauer and Lancer Management managed. Four factors govern entitlement to a fee award: (1) the public benefit from the case; (2) the commercial benefit to the complainant; (3) the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. *Burka v. U.S. Department of Health & Human Services*, 142 F.3d 1286, 1288 (D.C. Cir. 1998).

### Background[1]

In the late twentieth century and into the twenty-first, Michael Lauer was a celebrated analyst and then hedge fund asset manager operating through Lancer Management I and II, which managed over $1 billion in three hedge funds (with by far the largest, as well as another, based in the British Virgin Islands). Mr. Lauer and Lancer Management were based only in New York City and Connecticut in the United States, with most of the hedge funds' activities in the British Virgin Islands (BVI). Mr. Lauer had won awards and had never been sued or the subject of administrative proceedings. His net worth exceeded $100 million.

---

[1] This summary is derived from Mr. Lauer's *pro se* opening and reply briefs and his attorney-assisted post-argument brief in the Eleventh Circuit, as supplemented by his pending motions to vacate the judgment and dismiss the complaint. When appropriate, this petition will cite to docket entries in SEC v. Lauer. The judicial proceedings are described below.

In or about 2000 the FBI set up in Florida a financial sting called Bermuda Short, which employed two career financial criminal operatives and snared dozen of people. For reasons still unknown the sting solicited Mr. Lauer multiple times and he repudiated every one of them. Nevertheless, the DOJ was not satisfied. It solicited the SEC's Miami office to investigate Mr. Lauer and Lancer.

Conducting a joint investigation involving the civil SEC authorities in Miami and the DOJ criminal authorities, which included the DOJ giving the SEC secret grand jury material and the SEC providing the DOJ discovery material, the SEC's Miami office (lawyers Kerry Zinn and Christopher Martin) opened a preliminary investigation against Mr. Lauer and Lancer Management. They fully cooperated with the SEC, even though they were advised that the SEC lacked jurisdiction. Then, without giving them a chance to contest the allegations, the SEC filed an enforcement action against Lancer and Mr. Lauer in south Florida on July 8, 2003, the first case in the history of the SEC's Miami office involving hedge funds, *SEC v. Lauer*, No. 03 Civ. 80612, S.D. Fla. The essence of the charge against Mr. Lauer was that he manipulated the price and inflated the value of the assets in the three hedge funds, which increased his fees by many millions of dollars.

In the months and years that followed, Mr. Lauer's constitutional and other rights were repeatedly violated. On July 10, 2003, the SEC lawyers met with Chief Judge Zloch in an *ex parte* hearing concealed from Mr. Lauer, where the SEC presented false information, including that Mr. Lauer had an overseas bank account, DE 20 at 8-9, and the judge entered a broad temporary restraining order, froze all his assets, and appointed a receiver (who had no hedge fund experience) for Lancer Management and the hedge funds. DE 18. The next morning the receiver's agents closed down Lancer Management, summarily fired all its employees and effectively unseated the directors, and took control over the hedge funds (in which Mr. Lauer

was the largest investor), thereby effectively destroying Mr. Lauer's livelihood without Mr. Lauer (or anyone else) having been provided any sort of adversary hearing. Simultaneously, the court's asset freeze order denied Mr. Lauer any use of his funds, even assets acquired by him long before the alleged fraud started in March 2000.

Without funds to hire a lawyer, pay for documents, or attend depositions, Mr. Lauer tried to defend himself in a forum remote from his home and family against the combined forces of the SEC and receiver. He promptly sought relief from the total freeze. Six months after the case started Judge Zloch allowed him $10,000 to house and clothe himself (in Manhattan), his four minor children, his octogenarian mother, *and* to retain a lawyer to represent him in *SEC v. Lauer*. Moreover, Mr. Lauer's receiving even that amount was contingent on his selling his two homes to supply the money. DE 108. (Years later, in the Eleventh Circuit, one judge asked the SEC lawyer who defended the order, "What world are you in?") Because of the onerous conditions, which would have left Mr. Lauer with no home for his family and himself, Mr. Lauer was obliged to withdraw his request for modification of the absolute-freeze order.

Mr. Lauer continued *pro se* in the complex litigation with the SEC and the receiver, including fighting the receiver to salvage at least a portion of the assets from destruction, which included fire sales engineered by the receiver, including improper ones to corporate insiders. The SEC repeatedly attempted to get Mr. Lauer to settle the case, but he adamantly refused.

The SEC maintained maximum pressure on Mr. Lauer via an avalanche of motions, including discovery motions for material it possessed because the receiver had seized everything in New York and Connecticut and brought it to Miami. Despite Mr. Lauer's valid objections, Judge Zloch and later Judge Marra repeatedly enforced every one of the SEC's

demands and rejected every one of Mr. Lauer's motions for relief or mitigation of the freeze and discovery orders.

When at a hearing Judge Zloch said that he had concluded that Mr. Lauer was guilty of securities fraud – before hearing from Mr. Lauer on the merits of the dispute – Mr. Lauer filed a motion to recuse Judge Zloch. DE 319. Judge Zloch summarily ruled against Mr. Lauer without reassigning the motion to recuse, despite the fact he had stated his conviction on the ultimate issue in the case before he had heard any evidence. DE 326. He then decided against Mr. Lauer important pending motions, including his motion to transfer the case to the northeast and granting the SEC's motion to order him to show cause why he should not be held in contempt for violating the freeze and discovery orders. DE 332, 375, 376. Judge Zloch then recused himself.

Judge Marra, the new judge whose courtroom was next to Judge Zloch's, adopted all of Judge Zloch's orders without a hearing, denied Mr. Lauer any relief from the freeze order, including his seeking funds to hire a lawyer and retain expert witnesses, and for a speedy trial. Judge Marra held Mr. Lauer in contempt of court on the basis of debatable alleged violations of the freeze and discovery orders. The sanctions were Draconian, denying Mr. Lauer the right to testify in his own behalf at trial or summary judgment as well as call many witnesses who would have supported him.

Among the alleged freeze violations was that Mr. Lauer sold a motorcycle that belonged to his girl friend but had been registered in Mr. Lauer's name and that he had not surrendered his octogenarian mother's $7000 bank account that Mr. Lauer helped manage. Among the alleged discovery violations was that he had not answered detailed questions concerning his finances, on the ground that the SEC and receiver had taken his records. Although the federal rules state that that the production of documents can substitute for

answering interrogatories when the seeking party is as able to review the documents as the

producing party, Judge Marra summarily rejected Mr. Lauer's argument that the SEC and

receiver, and not he, held the documents and had the resources to analyze them, and ordered

him to answer burdensome questions. There was a dispute over where and when a multi-day

deposition of Lauer would take place and whether Mr. Lauer had received prior notice of the

deposition. Judge Marra not only found every fact in favor of the SEC, including ones on

which the SEC had the burden of proof but produced no evidence, but he relied on the incident

to hold Mr. Lauer in contempt of court.[2]

In January 2007, the *plaintiff* SEC moved for summary judgment in the extremely

complex case, which required the resolution of the defendant's state of mind. Moreover, the

special circumstances of *SEC v. Lauer* made the motion even more dubious because (a) the

SEC had no incriminating documents, such as incriminating email or memos; it was relying

solely on witness testimony to meet its burden of demonstrating that there were no undisputed

questions of material fact; thus, there were credibility issues that cannot be resolved on

summary judgment; (b) the SEC's witnesses were highly tainted and subject to impeachment;

---

[2] There were many other instances of questionable judicial action. For example, on January 26, 2005, Mr. Lauer filed *pro se* "Respondents Motion for Dismissal or Summary Judgment Pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedures [sic]." DE 746. The motion to dismiss was for lack of subject matter jurisdiction in view of the overseas locus of hedge-fund activity, which was the proper motion before Morrison v. National Australia Bank Ltd., 130 S.Ct. 2869, 2876-77 (2010), changed the law. The motion to dismiss occupied the first four pages of the motion. The SEC moved to strike the entire document on such grounds as that it exceeded the page limit and that discovery had not been completed. DE 778. Even though courts are required to raise *sua sponte* deficiencies in subject-matter jurisdiction, Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 514 (2006), Judge Marra struck the combined motion and proceeded with the case whether or not the court had subject-matter jurisdiction. DE 1075. Another instance was that Mr. Lauer was sued in a California state court in 2003 for activity covered by SEC v. Lauer. The federal district court's Case Management Order enjoined Mr. Lauer and others from participating in any state actions. Mr. Lauer filed the Case Management Order with the California state court. Nevertheless, the California state court entered a default judgment against Mr. Lauer. Over Mr. Lauer's protests the federal district court relied on the California default judgment to create collateral estoppel against Mr. Lauer, which provided a basis for the award of summary judgment against him. DE 2133 at 11, 36; App. Br. 11th Cir. 34-35; App. Post-Argument Br. 51.

some had even pleaded guilty and had made deals to testify in exchange for leniency; (c) most if not all of the SEC's witnesses had given testimony favorable to Mr. Lauer in the same depositions that formed the bases for the SEC's motion; (d) the SEC had no expert witness that Mr. Lauer manipulated share prices; and (e) the SEC's motion discussed none of Mr. Lauer's evidence, ignoring its burden of demonstrating that there were no disputed issues of fact. *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988) (failure to discuss nonmoving party's evidence violates Rule 11). Mr. Lauer filed an opposition that made these arguments and presented exculpatory excerpts from the same depositions as the ones on which the SEC relied, along with other supportive sworn trial testimony, all to the effect that he had done nothing improper. DE 1822, 1823, 1875.

While the SEC's motion for summary judgment was pending before Judge Marra, the DOJ indicted Mr. Lauer, again in South Florida, four and one half years after the civil suit was filed (along with codefendants Milton Barbarosh, Laurence Isaacson, Eric Hauser, and Martin Garvey, none of whom had had their assets frozen). *U.S. v. Lauer et al.*, No. 08-20071-Cr., S.D. Fla. The charges against Mr. Lauer were virtually identical to those in the civil case. The case was assigned to Judge Adalberto Jordan, who was promoted to the Eleventh Circuit in 2012. When Mr. Lauer sought relief from the freeze order from Judge Marra so he could use his own funds to hire an experienced lawyer with a securities background to defend himself from charges that provided for a maximum sentence of 20 years on each of the several counts, the SEC and receiver opposed the motion and Judge Marra denied it. DE 2240. At his criminal trial Mr. Lauer was represented by a Public Defender. His trial did not take place until the spring of 2011.

On September 28, 2008, Judge Marra granted the SEC's motion for summary judgment. DE 2133. His opinion was as unusual as the SEC's motion. In fact, it was the

motion.  What Judge Marra did was simply *scan* the SEC's initial motion, multiple

typographical errors and all, make some trivial editorial changes, and file it as his opinion.

Thus, the opinion contained none of Mr. Lauer's conflicting evidence filed in his opposition to

the SEC's, which Judge Marra dismissed with the back of his hand, as consisting mostly of

"unsupported hyperbole demonstrating nothing of probative value."  Mr. Lauer's evidence

relied heavily on testimony from the same witnesses given at the same depositions on which

the SEC relied.  Judge Marra court made a credibility judgment that the evidence cited by Mr.

Lauer – but not testimony cited by the SEC from the same depositions – was "hyperbole."

The opinion granting summary judgment made repeated credibility judgments on such matters

as whether Mr. Lauer was a "control person" and whether he was an "investment advisor."

Judge Marra also inverted the legal standard for granting summary judgment.  "The failure of

proof concerning an essential element of the *non-moving party's* case necessarily renders all

other facts immaterial and requires the court to grant the motion for summary judgment."  DE

2133, at 3 (emphasis added).

Rejecting Mr. Lauer's motion that sought to delay the disgorgement hearing on the

grounds that he should not be forced to defend two cases simultaneously and that the receiver

had the money that was the subject of the disgorgement hearing in any event, Judge Marra

scheduled a disgorgement hearing while he was preparing his criminal defense.  The hearing

and result also were unusual.  While disgorgement requires the computation of a defendant's or

ill-gotten gains, the SEC made no attempt to do that.  Instead, it produced a witness who

simply added up the money that Lancer paid Lauer during the alleged fraud period and called it

his unjust enrichment.  DE 2205.  Mr. Lauer's *pro se* cross-examinations and other evidence

showed, and he specifically argued, that the payments to him consisted entirely of money he

had earned prior to the alleged fraud (a fact that the SEC had earlier admitted, DE 20, at 8-9),

repayment of expenses, and other items that were not income during the relevant period. DE

2205 at 38-43, 93-94, 118-20, 125, 133. The SEC provided no evidence that Mr. Lauer's gross

receipts bore any resemblance to his alleged ill-gotten gains.

Again accepting the SEC's presentation without change, Judge Marra found that Mr.

Lauer had received and therefore was obliged to disgorge $43,688,249.00. Judge Marra then

added $18,908,558.74 as prejudgment interest for a total award of $62,596,807.74. DE 2260.

Thus, Judge Marra ordered Mr. Lauer to pay prejudgment interest on his funds that the court

had ordered frozen, which meant that Mr. Lauer had not been allowed to use those funds.

Interest is irrefutably money paid for the right to use money, as Mr. Lauer repeatedly and

unsuccessfully argued in the district court and court of appeals.

Mr. Lauer appealed. *SEC v. Lauer*, No. 09-15138, 11th Cir. Still *pro se*, he filed a brief

in December 2009 as well as a reply brief to the SEC's opposing brief. His briefs recounted

the history of the case as well as making a number of arguments, especially challenging the

grant of summary judgment, the disgorgement order, and the award of prejudgment interest.

The court of appeals set oral argument for February 1, 2012, two years later.

In April 2010, in the criminal case against Mr. Lauer and others, Judge Jordan held a

two-day evidentiary hearing on the allegation that the SEC had illegally used two

codefendants, Barbarosh and Isaacson, as confidential informants in its investigation of Lancer

and Mr. Lauer. Judge Jordan held that SEC's conduct was an issue for the jury. It was

uncontested, however, that in June 2003 codefendant Barbarosh had improperly and

surreptitiously obtained from Lancer's and Lauer's BVI attorneys an important confidential

and privileged report and delivered it to the SEC in violation of his attorney-client privilege.

Judge Jordan granted the motion to sever made by Mr. Lauer and Martin Garvey, the

codefendant who had worked at Lancer Management with Mr. Lauer, the only motion to sever

that Judge Jordan granted in his more than a decade in the district court.  The criminal trial against Mr. Lauer and Mr. Garvey started in late February 2011 before Judge Jordan and a jury.  In April 2011 the jury acquitted both after they called only three nonfact witnesses.

In mid-January 2012 Mr. Lauer retained two Washington, D.C., lawyers, including the undersigned, who argued the case in the Eleventh Circuit on February 1, 2012.  At the argument the panel stated that it would permit the filing of additional briefs, with Mr. Lauer's due on March 2, 2012, and the SEC's thirty days after.  Mr. Lauer's brief refined, expanded, and supplemented arguments made in Mr. Lauer's *pro se* briefs.  Claiming that the post-argument brief presented new arguments that required additional time to answer, the SEC moved for a sixty-day extension of its deadline for filing its post-argument brief.

On April 19, 2012, without waiting for the SEC's opposition brief, the Eleventh Circuit filed a *per curiam* and unpublished opinion that affirmed the district court in all respects. The opinion dealt with few, if any, of the difficult issues raised in the briefs filed by and on behalf of Mr. Lauer.  Mr. Lauer filed a petition for rehearing or rehearing en banc.  Without waiting for a reply from the SEC, the Court of Appeals denied the motion on June 20 without dissent.

Mr. Lauer filed a petition for *certiorari*.  *Lauer v. SEC*, No. 12-260.  The Solicitor General chose not to file a response.  The Supreme Court denied *certiorari* on October 29, 2012.  As a result, neither the United States Government nor any court has ever provided a response to the principal arguments presented in the briefs filed by Mr. Lauer and his attorneys; they stand uncontradicted.

In early 2013, represented by undersigned counsel, Mr. Lauer filed two motions to vacate the judgment and dismiss the complaint under Rule 60(b)(4) ("the judgment is void," including that "if the court that rendered it . . . acted in a manner inconsistent with due process of law") and Rule 60(d)(3)("set aside a judgment for fraud on the court").   DE 2676, 2677.

Mr. Lauer relies on several grounds, including the court's unconstitutionally denying him the right to use his own funds in litigating with the government; the SEC's lying in opposing his motion to transfer; and Judge Zloch's conduct surrounding the reassignment. One other ground is directly involved with the instant FOIA case, namely, Mr. Lauer's argument to dismiss the complaint on the ground that the SEC Commission had not properly authorized the filing of a suit against him, Lancer Management, and the hedge funds.

### Significance of FOIA Production

The documents produced under FOIA both furthered the efforts of Mr. Lauer to vindicate himself and have provided information to the public about highly questionable procedures employed by the SEC, including the SEC's Miami office's simultaneously refusal to produce in discovery the very documents produced by the SEC pursuant to the instant FOIA request. The Miami SEC argued in *SEC v. Lauer* that the document, which constituted the *decision* of the Commission, required by Congress under the securities laws, "go to the heart of attorney-client communications" and were privileged! Exhibit D, at 6-7, DE 2700. Improper stonewalling in *SEC v. Lauer* might well have deprived Mr. Lauer of important defenses and deprived the public of insight into how the Commission violated the law had the FOIA suit not been successful.

Both the content and the timing of the FOIA production were critical. Without the information and arguments contained in the reply and supplement to the reply, Judge Marra might have promptly decided the motions adversely to Mr. Lauer and the documents would never have surfaced. The public benefits when justice is done and benefits further when improper activities are brought to light.

Based on production of Exhibits B and C, Mr. Lauer argues in the Florida district court that defects in the Commission's purported approval require granting him relief, demonstrating

the tangible benefits of his victory in this case. First, that the failure to have a majority of the Commissioners personally authorize filing suit meant that the authorization was of no force or effect, because the securities laws required the Commissioners to act personally. Exhibit E, at 3-4, 5, DE 2708. Second, the Commission's purported authorization to include the hedge funds as "relief" or nominal defendants did not permit the court to appoint a receiver for them, because, *inter alia*, by definition relief defendants had done nothing wrong. Exhibit F, DE 2717. Moreover, the appointment of a receiver and his action seriously prejudiced the funds and occurred without any adversary hearing at which the funds were heard. Scores of investors have been harmed.

Deficiencies on the part of the SEC such as just described constitute a form of lawlessness that is of major interest to the three branches of the government, and also people subject to SEC jurisdiction and to the public at large. In addition to the specific deficiencies just discussed, the Commission, on the same day, somehow managed to authorize both a formal investigation of Mr. Lauer and Lancer Management and a civil lawsuit against them. Exhibit B. This bespeaks of the left hand not knowing what the right hand is doing. What public fallout will ensue from the FOIA production is too early to tell. This information fully satisfies the remaining requirements to receive attorneys' fees and costs. *Burka v. United States Dept. of Health & Human Services*, 142 F.3d 1286, 1288 (D.C. Cir. 1998). The produced documents are both of great importance to Mr. Lauer and further the public interest by providing information about dubious conduct on the part of an important federal agency that both acts improperly and lacks transparency.

Finally, the SEC had no reasonable basis for withholding the decision of the Commission to authorize suit against Mr. Lauer. Exemption 5 has been construed as narrowly as consistent with efficient Government operation. *E.g.*, *EPA v. Mink*, 410 U.S. 73, 89, 93

(1973. It covers the thinking process of the agency in making policies and decisions. *E.g.,*

*NLRB v. Sears,. Roebuck & Co.*, 421 U.S. 132, 149, 153 (1965). An agency decision is not

part of the deliberative pre-decisional process. *EPA v. Mink*, 410 U.S. at 88; *Bristol-Myers Co.*

v. *FTC*, 598 F.2d 18 (D.C. Cir. 1978). Exemption 5 has nothing to do with the document that

makes the decision of an agency

## Attorneys' Fees and Costs

Given the importance and unusual success of this request, including obtaining identical

documents that the SEC resisted producing in another forum, the attorneys' fees and costs

sought are appropriate and reasonable. While representing Mr. Lauer in his individual

capacity, Mr. Dorsen is Of Counsel with Sedgwick, LLP. The undersigned includes his CV for

the Court's information. Exhibit G. The firm has fixed his billing rate at $600/hours. Mr.

Dorsen has kept contemporaneous time records in this case on his calendar, and what is stated

below is the accurate time indicated on his calendar with a substantially verbatim description

of the services he performed. The dates, amount of time spent, and description of the services

performed in connection with litigating this case are as follows:

| 3/2/13 | 5.6 hours | Legal and factual research re FOIA claim, drafting complaint, communications with client |
| 3/3/13 | 2.1 hours | Drafting motion for summary judgment, including statement of material facts not in dispute |
| 3/4/13 | 2.6 hours | Editing FOIA complaint and motion for MSJ, supplying record references, communications with client |
| 3/5/13 | 2.5 hours | Final edit of filings, summons and cover sheet, filing complaint and MSJ in district court |
| 3/18/13 | 0.4 hour | Reviewing SEC production, communications with client |
| 3/22/13 | 0.2 hour | Reviewing SEC production, communications with client |
| 3/23/13 | 0.1 hour | Email to SEC lawyer re further production |
| 3/27/13 | 0.2 hour | Communications with client and SEC lawyer re further production |

| 3/29/13 | 0.3 hour | Review new SEC production, communications with client and SEC lawyer |
| 4/2/13 | 0.4 hour | Communications with SEC lawyer, drafting notice re concluding merits phase of case |
| 4/3/13 | <u>0.2 hour</u> | Finalizing notice, serving and filing same |
| | **14.4 Hours** | |

The amount of attorneys' fees sought is $8640.00.

The court filing fee in the above case was $350.00.

The total amount of attorneys' fees and costs sought is $8990.00.


The undersigned certifies, this 8th day of April, 2013, subject to punishment for perjury under the law of the District of Columbia that the aforesaid petition is true and correct to the best of his knowledge.

DAVID M. DORSEN
D.C. Bar No. 199653

2900 K Street, N.W.
Suite 500
Washington, DC 20007
202 204-3706
Dorsen35@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of April, 2013, a true and correct copy of the

foregoing has been sent by USPC mail, first class, to:

> Kevin Solonsky, Esq.
> Senior Counsel
> Office of the General Counsel
> Securities and Exchange Commission
> 100 F Street, N.E.
> Washington, DC 20549

_____
David M. Dorsen

# EXHIBIT B



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

Stop 9612                                        March 13, 2013

David M. Dorsen
2900 K Street, N.W., Suite 500
Washington, D.C. 20007

      Re:    Appeal, Freedom of Information Act (FOIA) Request No. 2012-10548

Dear Mr. Dorsen:

      I am responding to your November 13, 2012, Freedom of Information Act appeal of the decision of the FOIA/Privacy Act Officer, Securities and Exchange Commission, to withhold documents submitted by Commission staff to the Commissioners related to a civil complaint against Michael Lauer as well as records reflecting any vote to authorize an investigation and filing of the civil complaint against Mr. Lauer. On November 5, 2012, the FOIA Officer asserted Exemption 5, 5 U.S.C. 552(b)(5), to withhold responsive records. In your November 13 appeal, as further clarified on November 16, you limited the scope of the request to solely those records reflecting the "collective vote of the Commissioners" to authorize an investigation and civil action. As narrowed on appeal, your request excludes any communications from Commission attorneys and staff to the Commission. I have reviewed your appeal and have determined to exercise my discretion and to release the seriatim vote authorizing the filing of a civil action and a copy of the Formal Order of Investigation, both of which are enclosed. This discretionary release should not be interpreted as a waiver of any applicable exemption should you make a request for similar information in the future.

                                   For the Commission
                                    by delegated authority,

                                    Richard M. Humes
                                    Associate General Counsel

Enclosure

NON-PUBLIC

UNITED STATES OF AMERICA
before the
SECURITIES AND EXCHANGE COMMISSION

July 7, 2003

| | | |
|---|---|---|
| In the Matter of | : | |
| | : | |
| | : | ORDER DIRECTING PRIVATE |
| LANCER OFFSHORE, INC. | : | INVESTIGATION AND |
| | : | DESIGNATING OFFICERS |
| FL-02939 | : | TO TAKE TESTIMONY |
| | : | |

I

The staff has reported information to the Commission that tends to show that:

A.      Three hedge funds started in 1994, 1995 and 1999, that are not registered with the Commission, - - Lancer Partners LP, Lancer Offshore, Inc., and The OmniFund, Ltd. (collectively referred to as the "Lancer Funds") - - offered investments to the public, in the form of limited partnership interests or shares, the proceeds of which were used by the Lancer Funds to primarily invest in small and mid-cap companies. At their peak, the Lancer Funds reportedly managed over $1.2 billion.

B.      At all relevant times, Michael Lauer ("Lauer"), through his management companies, Lancer Management Group LLC and Lancer Management Group II LLC ("Lancer Management"), operated the Lancer Funds and served as its investment manager. Lauer is the founder, sole manager and principal owner of Lancer Management.

C.      While engaged in the offer and sale, and in connection with the purchase and sale of securities, in the form of limited partnership interests or shares, Lauer and Lancer Management and certain of their present and/or former officers, directors, employees, agents, affiliates and other persons or entities may have, directly or indirectly, employed devices, schemes or artifices to defraud; obtained money or property by means of, or otherwise may have made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, transactions, practices, or courses of business which would and did operate as a fraud or deceit upon purchasers and others concerning, among other things, manipulative trading practices, the value of the Lancer Funds portfolios, the manner of their operations, specific portfolio holdings, and management's background.

D.     From at least 2000 to July 2003, Lauer, Lancer Management, and other persons or entities associated with them, in connection with them or their business as an investment adviser, may have, directly or indirectly, employed devices, schemes or artifices to defraud any client or prospective client; or engaged in transactions, practices or courses of business which have operated or would operate as a fraud or deceit upon any client or prospective client, concerning, among other things, manipulative trading practices, the value of the Lancer Funds portfolios, the manner of their operations, specific portfolio holdings, and management's background.

E.     While engaged in the activities set forth above, Lauer and Lancer Management and certain of their present and/or former officers, directors, employees, agents, affiliates and other persons or entities, directly or indirectly, made use of the mails, and the means and instruments of transportation and communication in interstate commerce, and of the means and instrumentalities of interstate commerce, or the facility of a national securities exchange.

II.

The Commission, having considered the staff's report and deeming such acts and practices, if true, to be a possible violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act"), finds it necessary and appropriate and hereby:

**ORDERS**, pursuant to the provisions of Section 20(a) of the Securities Act, Section 21(a) of the Exchange Act and Section 209(a) of the Advisers Act, that a private investigation be made to determine whether the aforesaid persons, entities, or others have engaged or are about to engage in any of the reported acts, or practices or in any acts or practices of similar purport or object; and

**IT IS FURTHER ORDERED**, pursuant to the provisions of Section 19(c) of the Securities Act, Section 21(b) of the Exchange Act and Section 209(b) of the Advisers Act, that for the purposes of such investigation David Nelson, Glenn S. Gordon, John C. Mattimore, Nicholas A. Monaco, Eric R. Busto, Robbie L. Mayer, Terence M. Tennant, Fernando Torres, Trisha D. Sindler, Teresa J. Verges, Kerry A. Zinn, Robert K. Levenson, Alise Johnson, Chris Martin, Jon Jordan, and each of them, are hereby designated officers of the Commission and empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require the production of any books, papers, correspondence,

2

memoranda, co.. .cts, agreements, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

By the Commission.


Jonathan G. Katz
Secretary


*Jill M. Peterson*

By: Jill M. Peterson,
     Assistant Secretary

3

PR   ˈLEGED & CONFIDENTIAL

REQUEST FOR COMMISSION ACTION

Date:      June 27, 2003                              Control No.:  S ‑ O3 ‑ 28O ‑ ENF
SUBJECT/S: Lancer Offshore, Inc. (FL-02939)

REQUESTED: That the Commission (1) authorize the staff to file an emergency civil action against Michael Lauer, Lancer Management Group LLC and Lancer Management Group II LLC (collectively referred to as "Lancer Management").

N/R

(x )      SERIATIM CONSIDERATION - Joint deliberation by the members of the Commission on this matter is unnecessary, impracticable, or contrary to the requirements of agency business, pursuant to the provisions of 17 CFR 200.42(a).

( )       DUTY OFFICER CONSIDERATION - Pursuant to the provisions of 17 CFR 200.43(b).

( )       EMERGENCY CALENDAR CONSIDERATION FOR:
Action Requested By: July 7, 2003
TIMING ISSUES (Complete only if applicable)
     ( X ) REASON EXPEDITED ACTION IS REQUESTED: Lauer and Lancer Management remain in control of substantial investor assets. A temporary restraining order is needed to ensure that the Court considers this matter on an expedited basis.
     ( ) EXTERNAL DEADLINE:

_____                          _____
Requesting Division Director                      Ass't   Secretary
                                                   Duty Officer Commissioner

                                                   Date: _____

| | Seriatim Commission Action | | Duty Officer Action | Deferred for Regular Calendar |
|---|---|---|---|---|
| | Apprd | Date | Disapprd | Affirmed | Date |
| Chairman Donaldson | WHD/PNb | 7/7/03 | | _____ | _____ |
| Commissioner Glassman | | | | _____ | _____ |
| Commissioner Goldschmid | | 7/3/03 | | _____ | _____ |
| Commissioner Atkins | Recused-? | | | _____ | _____ |
| Commissioner Campos | RGH? | 7/7/03 | | _____ | _____ |
| | | | Date of Action | _____ | |

✗ change or tentative

# EXHIBIT C



**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
*Office of the General Counsel, Washington, D.C. 20549-9612*

*Kevin D. Solonsky*
*Senior Counsel*

March 28, 2013

BY OVERNIGHT DELIVERY

David M. Dorsen
Sedgwick LLP
2900 K Street, N.W., Suite 500
Washington, D.C. 20007-5127

      Re:   Dorsen v. SEC, D.D.C. No. 13-288

Dear Mr. Dorsen,

    Enclosed, please find the June 27, 2003 Seriatim Cover Sheet with the additional information you requested.

                     Very truly yours,

                     Kevin D. Solonsky
                     (202) 551-5014

Enclosure

PRIVILEGED & CONFIDENTIAL

REQUEST FOR COMMISSION ACTION

Date:      June 27, 2003                              Control No.: _____

SUBJECT: U.S. Lancer Offshore, Inc. (HL-02939)

REQUESTED: That the Commission (1) authorize the staff to file an emergency civil action against Michael Lauer, Lancer Management Group LLC and Lancer Management Group II LLC (collectively referred to as "Lancer Management").

(2) authorize the staff to name Lancer Offshore
Inc., Lancer Partners LP, The Omnifund, Ltd., LSPV Inc., and LSPV, LLC as relief defendants.

---

(x)      SERIATIM CONSIDERATION - Joint deliberation by the members of the Commission on this matter is unnecessary, impracticable, or contrary to the requirements of agency business, pursuant to the provisions of 17 CFR 200.42(a).

( )      DUTY OFFICER CONSIDERATION - Pursuant to the provisions of 17 CFR 200.43(b).

( )      EMERGENCY CALENDAR CONSIDERATION FOR:
Action Requested By: July 7, 2003
TIMING ISSUES (Complete only if applicable)
       ( X) REASON EXPEDITED ACTION IS REQUESTED: Lauer and Lancer Management remain in control of substantial investor assets. A temporary restraining order is needed to ensure that the Court considers this matter on an expedited basis.
       ( ) EXTERNAL DEADLINE:

_____
Requesting Division Director

                                            Ass't. Secretary
                                            _____
                                            Duty Officer/Commissioner

                                            Date: _____

---

|  | Seriatim Commission Action | | | Duty Officer Action | | Deferred for Regular Calendar |
|---|---|---|---|---|---|---|
|  | Apprd | Date | Disappd | Affirmed | Date |  |
| Chairman Donaldson |  | 7/7/03 |  |  |  |  |
| Commissioner Glassman |  |  |  |  |  |  |
| Commissioner Goldschmid |  |  |  |  |  |  |
| Commissioner Atkins |  |  |  |  |  |  |
| Commissioner Campos |  |  |  |  |  |  |
|  |  |  |  | Date of Action |  |  |

change over alternative

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 03-80612-CIV-MARRA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MICHAEL LAUER, | ) |
| LANCER MANAGEMENT GROUP, LLC, and | ) |
| LANCER MANAGEMENT GROUP II, LLC, | ) |
|  | ) |
| Defendants, | ) |
| and | ) |
|  | ) |
| LANCER OFFSHORE, INC., | ) |
| LANCER PARTNERS, LP, | ) |
| OMNIFUND, LTD., | ) |
| LSPV, INC., and | ) |
| LSPV, LLC, | ) |
|  | ) |
| Relief Defendants. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MICHAEL LAUER'S REQUEST FOR AN ORDER ALLOWING THE PARTIES TO TAKE DISCOVERY RELATING SOLELY TO DEFENDANT'S MOTION TO VACATE

### I.    Introduction

For three primary reasons the Court should deny Defendant Michael Lauer's Request for

an Order Allowing the Parties to Take Discovery Relating Solely to Defendant's Motion to

Vacate the Judgment (DE 2679). First, Lauer's Motion to Vacate the Final Judgment pursuant to

Federal Rules of Civil Procedure ("Fed.R.Civ.Pro.") 60(b)(3)&(4) is meritless. For reasons more

fully explained in the Plaintiff Securities and Exchange Commission's Response in Opposition to

Lauer's Motion to Vacate, his requested relief pursuant to 60(b)(3) is time barred as he waited

more than one year from the Final Judgment in this case to file his Motion to Vacate the Final

Judgment. Additionally, his requested relief pursuant to 60(b)(4) is on its face irrelevant, since

there are no grounds to make the Final Judgment void and he has not been deprived of his due

process right to be heard.[1]  Hence, taking discovery on his Motion to Vacate the Final Judgment

serves no legitimate purpose.  Second, Lauer has not cited any applicable legal support[2] to

surpass the high hurdle he must overcome to obtain post-judgment discovery.  Third, the fishing

expedition nature of the discovery he seeks is largely pointless, because he seeks information

protected by the attorney-client, work product, deliberative process, and other privileges.  In

sum, the Court should deny his request for discovery, which represents nothing more than

Lauer's latest attempt to overturn a Final Judgment that was properly and fairly entered against

Lauer, the perpetrator of a massive fraud that costs investors hundreds of millions while he

personally reaped more than $40 million in ill-gotten gains.[3]

---

[1] Lauer may not like the outcome, but one thing is certain in this case it is that Lauer was heard (over and over again).  He filed seemingly countless motions, motions for reconsideration, and sur-replies.  He also filed several appeals of this Court's rulings and two of those appeals he fully prosecuted to decisions by the 11th Circuit.  Both decisions by the 11th Circuit completely affirmed this Court's Orders.  In addition, he petitioned the 11th Circuit for *en banc* review and the Supreme Court for *writ of certiorari*, both which were denied. *See e g , Lauer v SEC,* 133 S.Ct. 545 (2013).  In sum, Lauer has been heard and had his day in Court.  He lost his case fair and square.  Hence, there is no legitimate interest in restarting this protracted litigation to re-litigate these issues again.

[2] None of the cases cited by Lauer in his Motion for Discovery involves a party obtaining discovery in support of Fed.R.Civ.Pro 60(b) motion.

[3] Indeed, without the asset freeze this would have been in many ways a Pyrrhic victory.  The only payments made to date by Lauer (less than $10 million) come from the funds frozen at the onset of the case, which irrefutably demonstrates he would have paid nothing, but for the asset freeze that was properly ordered and consented to by Lauer.  Also, this further demonstrates that Lauer's frozen assets, contrary to his repeated claims, were not anywhere close to exceeding his ill-gotten gains.

## II.     Legal Memorandum

### A. Lauer's Motion to Vacate the Final Judgment is Meritless

Lauer's Motion to Vacate the Final Judgment pursuant to Fed.R.Civ.Pro. 60(b)(3)&(4) is meritless.[4]   Lauer's requested relief pursuant to 60(b)(3) is time barred.   The Opinion and Order regarding Summary Judgment in this case was entered against Lauer on September 24, 2008. [DE 2133].   On September 22, 2009, the Court entered Final Judgment against Lauer.   Now, more than three years after the Court entered Final Judgment against him, he files a Motion to Vacate the Final Judgment.   Yet, this is simply too late.   Lauer was required to bring a Motion to Vacate the Final Judgment pursuant Fed.R.Civ.Pro. 60(b)(3) within one year of entry of the Final Judgment, which was September 22, 2010.   Lauer may claim he brought the Motion within one year of exhausting his appeals.   However, this is of no consequence under the law.   Accordingly, Lauer's requested relief pursuant to 60(b)(3) is time barred.

Furthermore, his requested relief pursuant to 60(b)(4) is on its face irrelevant.   There is no valid reason to make the Final Judgment void.   His claim that the Commission's staff lacked authorization is baseless.   In addition, he has not been deprived of his due process right to be heard.   He was heard, over and over again in this case.   Accordingly, taking discovery on his Motion to Vacate the Final Judgment serves no legitimate purpose.

### B. Lauer Has Not Overcome the High Hurdle He Must Surpass to Obtain Post-Judgment Discovery

Lauer has not made any showing that he is entitled to take discovery.   Generally a court has broad discretion in regulating discovery.   *See Scutieri v. Paige*, 808 F.2d 785, 795 (11th Cir. 1987) (Eleventh Circuit affirmed district court's denial of parties request for further discovery because district court had detailed record of the evidence and it was not adequately shown how

---

[4] The Commission hereby incorporates by reference its Response in Opposition to Lauer's Motion to Vacate.

further discovery would have aided the court's determination); *Hornor, Townsend & Kent, Inc. v. Hamilton*, 2003 WL 23832424 (N.D. Ga. 2003). Some courts have also found that the usually flexible discovery provisions of the Fed.R.Civ.Pro. are less generous after pleadings and trial. *See U.S. ex rel. Free v. Peters, et al.*, 826 F.Supp. 1153, 1154-55 (N.D. Ill. 1993) (courts "generally embrace restrictive discovery rights post-trial, requiring a prima facie demonstration of success on the merits."); *see also Halliburton Energy Serv., Inc. v. NL Indus.*, 618 F.Supp.2d 614, 654 (S.D. Tx. 2009); *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976) (party not entitled to discovery on 60(b) fraud claim on documents it failed to request in pretrial discovery). Lauer simply has not made a *prima facie* demonstration of success on the merits. Lauer has also not demonstrated that the discovery he seeks will aid this Court in any way. The Court should, therefore, deny the Motion to obtain post-Final Judgment discovery.

Moreover, an additional ground for the Court to deny Lauer's Motion is that each of the issues raised in the Motion to Vacate the Final Judgment have already been brought before this Court and/or the Court of Appeals or could have been brought before entry of Final Judgment. Lauer also could have requested any of the listed documents during the normal discovery process (although, nearly all of his requests would suffer from the same defect – the information he seeks is privileged).

Furthermore, the legal authorities relied upon by Lauer in support of his case are inapposite to the situation at hand.[5] Lauer cites to a non-binding, subpoena enforcement case, *SEC v. Lavin*, 111 F.3d 921 (D.C. Cir. 1997) for his claim that Court's inquiry should be "whether special circumstances existed requiring discovery, not whether the agency had acted in bad faith"). [Motion at p. 3]. However, the inquiry in *Lavin* did not involve a Rule 60(b)

---

[5] Lauer asserts this brief was largely prepared by David M. Dorsen, Esq.

motion. Instead, it primarily involved whether before ruling on whether to enforce a Commission subpoena should a married couple be able to take discovery regarding whether they properly protected their marital privilege. Lauer also cites to two non-binding cases, *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118 (3d Cir. 1981) and *United States v. Church of Scientology*, 520 F.2d 818 (9th 1975) (Motion at 3), but similarly neither of these cases involve 60(b). Instead, both cases involve whether to enforce an administrative subpoena.

In addition, Lauer cites to *United States v Espinosa-Hernandez*, 918 F.2d 911 (11th Cir. 1990) for a blanket assertion that "Lauer is entitled to discovery on his claims." [Motion at p. 1]. However, once again this case did not involve Fed.R.Civ.Pro 60(b); instead, it primarily involved whether under Rule 33 of the Rules of Criminal Procedure[6] should the defendant be allowed an evidentiary hearing and take discovery in aid of his motion for a new trial based on newly discovered evidence. The claims in *Espinosa-Hernandez* pale in comparison even to Lauer's outlandish claims in this case. Therein, it was alleged that a new trial should occur since, among other reasons, the sole witness who testified in the defendants grand jury proceeding had been recently indicted for allegedly making false statements on his federal job application regarding his past use and sale of drugs. Additionally, the appellant asserted this same witness who testified adversely to the defendant is under investigation for both his participation in the escape from federal custody of an incarcerated confidential government informant and his alleged distribution of cocaine. [*Id.*, at 913]. In sum, the legal authorities cited by Lauer are inapplicable to the facts and procedural posture of the case at hand and do not support his claim that "he is

---

[6] According to the 11th Circuit in *Espinosa-Hernandez*, under Rule 33 of the Criminal Rules of Procedure to obtain a new trial based on newly discovered evidence: "(1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an acquittal; and (4) the failure to learn of such evidence must be due to no lack of due diligence on the part of the defendant. *United States v Sjeklocha*, 843 F.2d 485, 487 (11th Cir.1988)." Lauer makes no attempt to explain why these criminal standards would be relevant to his Motion to Vacate the Final Judgment made pursuant to Fed.R.Civ.Pro. 60(b)(3)&(4).

entitled to discovery" on his meritless Motion to Vacate the Final Judgment, which has already been affirmed after review by nearly the highest levels of judicial scrutiny and review.

### C. Lauer Seeks a Fishing Expedition

Lauer seeks to conduct a fishing expedition to try to re-litigate this nearly decade old case. Documents Lauer requests are plainly protected by, among other things, the attorney-client, work product, deliberative process privileges.[7] For example, Lauer requests all documents leading up to the SEC'S filing of the complaint against Lauer and others, which include: (a) documents demonstrating whether the Commission or any individual Commissioner authorized or approved a formal investigation and/or the filing of a complaint against Lauer; (b) correspondence and memoranda between the SEC Miami Office and the SEC in Washington or within the SEC Miami Office preceding the commencement of this action, including, but not limited to (i) documents relating to the filing of this action; (ii) the nature and scope of interim relief to be sought, including TRO and appointment of a Receiver; and (c) documents generated after the filing of this action between the SEC Miami Office and the SEC in Washington relating to the filing of this case. Nearly all of these requested documents go to the heart of attorney-client communications, since they involve the Commission's attorneys' communications with their client (the Commissioners) about whether to bring a case, the nature and scope of the case that the Commission should bring, and which parties the Commission should name in the case and why. Since Lauer's Motion to Vacate the Final Judgment is substantively meritless, his requests are overbroad, seek to invade applicable privileges, and/or are irrelevant to his claims,

---

[7] The Commission reserves its rights, if needed to respond and assert objections and applicable privileges to each of Lauer's requests.

the entire exercise would be a waste of time and judicial and party resources.[8]   Moreover, Lauer

has failed to make a *prima facie* demonstration of success on the merits or that the discovery he

seeks will aid this Court.   The Court should simply not allow Lauer to re-litigate this nearly

decade old case through an assault of the Commission's privileges, seeking overly broad

categories of documents, or seeking information irrelevant to deciding Lauer's Motion to Vacate

the Final Judgment.   For example, Lauer filed a Motion to Vacate the Final Judgment arguing

that: (i) the Commission commenced the Enforcement Action without proper authorization; (ii)

the Commission interfered with his attorney-client relationship; (iii) the Commission made false

representations with respect to his request to transfer venue; and (iv) this Court improperly

deprived him of funds to hire counsel.   However, he requests information regarding the

administration of the Receivership estate, communications between the Commission and FBI and

the Department of Justice, and all affidavits of a fund director.   These documents have no

rational bearing on the grounds Lauer seeks to vacate the more than three year old Final

Judgment.

---

[8] Some of Lauer's other discovery requests go to how the Receiver administrated the receivership estate, which is irrelevant to anything at issue in his Motion to Vacate the Final Judgment and seeks privileged documents as well. Notably, in related proceedings involving the Receiver, this Court has already found that it would not allow discovery into these types of matters, because it would invade the Receiver's privileges. *See e.g., Court-Appointed Receiver of Lancer Management Group, LLC, et al , v. Michael Lauer, et al*, 05-60584-CIV-MARRA (DE 574, First Order at p. 9), Other of Lauer's discovery requests go to communications between the Commission, the Receiver, the FBI or Department of Justice, which are protected by the work product, common interest, investigatory, and other privileges.

III.   **Conclusion**

Based on the foregoing, the Commission respectfully requests that the Court deny Lauer's Motion for Discovery.

Respectfully submitted,

March 21, 2013                              By: s/ Christopher E. Martin
                                           Christopher E. Martin
                                           Senior Trial Counsel
                                           SD Fla. Bar. No. A5500747
                                           Direct Dial No.: (305) 982-6386

                                           Attorney for Plaintiff
                                           **SECURITIES AND EXCHANGE COMMISSION**
                                           801 Brickell Avenue, Suite 1800
                                           Miami, Florida 33131
                                           Telephone: (305) 982-6300
                                           Facsimile: (305) 536-4154

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that today or on the date listed below the foregoing document is being served on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                           s/ Christopher E. Martin
                                           Christopher E. Martin

## SERVICE LIST

Securities and Exchange Commission v. Michael Lauer, et al.
Case No. 03-80612-CIV-MARRA

Marty Steinberg, Receiver
David E. Bane, Esq.
Hunton & Williams LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131-1802
Telephone: (305) 810-2505
Facsimile: (305) 810-2460
Service by CM/ECF

Michael Lauer
c/o David M. Dorsen, Esq.
2900 K. Street, N.W., Suite 500
Washington, DC 20007
Telephone: (202) 204-3706
Email: Dorsen35@aol.com
Service by Overnight Mail
on March 22, 2013

David M. Dorsen, Esq.
2900 K. Street, N.W., Suite 500
Washington, DC 20007
Telephone: (202) 204-3706
Email: Dorsen35@aol.com
Service by CM/ECF and Overnight
Mail on March 22, 2013

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-80612-Civ-MARRA

SECURITIES AND EXCHANGE COMMISSION,  )

    Plaintiff,                             )

        v.                                )

MICHAEL LAUER,                  )

    Defendant.                     )

## DEFENDANT MICHAEL LAUER'S REPLY TO SEC'S OPPOSITION TO MOTION TO VACATE THE JUDGMENT AND DISMISS COMPLAINT

The SEC's principal argument in DE 2703 is that Michael Lauer has been repeatedly and exhaustively heard so has no basis to complain. This includes his initial brief in the court of appeals, which the SEC has provided to the court. The SEC, however, misses his point. Its claim that Mr. Lauer has had every opportunity to be heard and was in fact heard is akin to the argument that Clarence Earl Gideon received a proper hearing when he appeared *pro se* in the Florida State Courts. The Supreme Court held that he had not because the Florida state courts had denied him his constitutional right to counsel. *Gideon v. Wainwright*, 372 U.S. 335 (1963). Mr. Lauer appeared *pro se* throughout virtually the entire proceeding in the district court in this case, which was brought by an agency of the United States and shares attributes with criminal prosecutions. He was wrongfully and unconstitutionally denied the use of his own money with which to hire counsel – as well as retain an expert, take any depositions or attend the SEC's depositions in person, or obtain access to the documents in the case, which the Receiver and the SEC had removed from Lancer offices and shipped to Florida and converted into a format that Mr. Lauer could not access without funds that were denied him.

The SEC's opposition does not contest Mr. Lauer's contention that a civil defendant has a constitutional right to use his own funds to hire an attorney. The district court unconstitutionally denied him that right. Mr. Lauer has alleged specific facts that demonstrate that his constitutional rights were violated, which the SEC chose to ignore. He was forced to proceed *pro se* in violation of the Fifth Amendment. Any conclusion by this court or the court of appeals on the basis of a record compiled when he was unconstitutionally forced to proceed without counsel is of no moment.

The entry and scope of a freeze order is subject to an adversarial hearing because they implicate questions of disputed fact on a constitutional issue. Mr. Lauer is entitled to a hearing on whether he was deprived of his constitutional right to retain counsel at a time when he obviously had no counsel. Similarly, when motions based on denial of counsel in the related area of criminal cases implicate disputed issues of fact, courts must hold evidentiary hearings to determine such issues as prejudice. *See Padilla v. Kentucky*, 130 S.Ct. 1473 (2010).

With Respect to specific allegations, the SEC claims that in the Eleventh Circuit Mr. Lauer raised the argument that the SEC improperly interfered with his attorney-client relationship with Martin Barbarosh before the SEC filed suit. DE 2703, at 3. That argument fails for the additional reason that there is nothing in this court's opinion that dealt with that claim for the simple reason that Mr. Lauer did not learn the facts until the criminal case, after the court granted summary judgment. It is impossible for the SEC to establish that the circuit court considered and decided the issue on the merits. The court of appeals may have not considered it because the record was silent on the issue or because it did not consider the issue material to its decision. Since the burden obviously is on the SEC to establish that the

court of appeals rejected the argument on the merits rather than for some other reason, its argument relating to preclusion falls.

He similarly did not make the argument he now makes relating to SEC's fraud on the court in connection with his transfer motion because he did not know the facts at the time he filed his motion. DE 2703, at 3. The trial record did not detail the misconduct, again for the reason that Mr. Lauer was not informed about it.

On page 4 of DE 2703 the SEC reiterates that Mr. Lauder repeatedly argued about the freeze. But that does not matter because Mr. Lauer had unconstitutionally been deprived of retained counsel. The Supreme Court did not ask what arguments Gideon made. Unconstitutional denial of counsel automatically required reversal.

The SEC stonewalls Mr. Lauer's argument that this lawsuit was not authorized in accordance with law. The SEC maintains that every piece of paper is privileged, including the very authorization itself. After Mr. Lauer filed his motions to vacate, the SEC responded to a FOIA request concerning the authorization to file this action. Exhibit 1. What it produced is very disturbing. Indeed, the documents strongly reinforce Mr. Lauer's position that the commencement of the action was a fraud on the court and made the action void.

The Commission's three-page letter dated July 7, 2003 relates solely to authorizing a formal investigation, not to the filing of a complaint. Moreover, it provides no facts worthy of the name. The other page produced is a Request for Commission Action, also dated July 7, 2003, which sought authorization to file an emergency civil complaint. Issuing the two documents the same day is bewildering. Initials of two Commissioners are dated July 3 and two are dated July 7, 2003, with one recusal. At most, two of the Commissioners, a minority, approved the request to file suit against Lauer and Lancer, but not the hedge funds, after obtaining the Order Directing Private Investigation. Two of the supposedly approving

Commissioners (Chairman Donaldson and Campos) were signed by someone else, both on July 7, 2003.

The Request noted that, "Joint deliberation by the members of the Commission on this matter is unnecessary . . . pursuant to the provisions of 17 C.F.R. 200.42(a)." But a quorum is three Commissioners. With five Commissioners a majority is five. 17 C.F.R. 200.41. There was nothing that allowed persons other than Commissioners to authorize the filing of a lawsuit in these circumstances. That voids the authorization under well established Supreme Court precedent. *United States v. Giordano*, 416 U.S. 505 (1974) (reversing conviction based on wiretaps not authorized by Attorney General or Assistant Attorney General where statute did not provide for delegating that authority). The claims presented in this motion are no more internal agency matters than they were in *Giordano*. The authority to file suit is every bit as fundamental as the authority to wiretap. The complaint must be dismissed and the judgment vacated.

More must be said about the failure of the Request for Commission Action to request authorization to include the hedge funds as defendants in this action. The Request reads in full: "That the Commission (1) authorizes the staff to file an emergency civil action against Michael Lauer, Lancer Management Group LLC and Lancer Management Group II LLC (collectively referred to as 'Lancer Management')." SEC regulations, 17 C.F.R. 200.41, 200.42, make it absolutely clear that when statutes refer to the Commission, they refer to the five Commissioners. The purpose of the statutory command that the Commission authorize the filing of a lawsuit is to maintain control at the highest levels of the agency to prevent unwarranted lawsuits at enormous cost to everyone as well as to insure uniformity of practice. Yet the SEC and the Receiver proceeded against the funds – Lancer Partners LP, Lancer Offshore, Inc., and the OmniFund, Ltd. – as though they owned them.

By what right did the SEC and the Receiver displace the duly elected directors of the hedge funds! Can a court-appointed receiver and a federal agency simply walk in and take over an operating business because they believe that there has been wrongdoing on the part of a company it contracted to mange it? They usurped all the prerogatives of ownership and management, ignoring the desires of their directors, managers, and investors. For example, in all likelihood, the directors would have continued to pay Mr. Lauer's attorneys' fees; the Receiver refused. The action by the Receiver and the SEC, performed without legal or other authorization, violates due process. This court should order the SEC to produce all documents related to the commencement of this action, without limit.

The SEC's argument in opposition to Mr. Lauer's motion is irrelevant. DE 2703, at 6-7. No one has said anything about statutes of limitations. And we're not talking about "every failure to observe a procedural requirement." We're talking about a statute that requires a majority of the Commission, not staff members, to authorize the filing of a major lawsuit. We're talking about the failure to authorize action against key parties. The *local* SEC's attempt to conceal documents from Mr. Lauer which the Commission released in a FOIA proceeding is indicative of the attitude of the SEC actions in this case. In fact, there is also no statement is stating the relief and claims authorized.

The SEC quotes *United Student Aid Funds. Inc v. Espinosa*, 559 U.S. 260 (2010): "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives that a party of notice or the opportunity to be heard." DE 2703, at 8-9. But Mr. Lauer was deprived of his constitutional right to be heard *with counsel*. That was *Gideon*'s position and it is applicable here. Improper denial of counsel means that there was no valid hearing, so Mr. Lauer was never heard under the law.

The SEC's argument on clean hands is risible in the context of fundamental violations of constitutional rights. Not only was a lawless and Draconian freeze imposed on Mr. Lauer, initially as a result of numerous false statements to the court at the *ex parte* hearing ("unclean hands"?), but the Receiver, with the SEC standing by, shuttered Mr. Lauer's business on the basis of an *ex parte* hearing, another flagrant violation of the Fifth Amendment. The SEC's ability to make pious statements about the scope of Mr. Lauer's alleged fraud flow directly from the violation of the Constitution and basic equity on the part of the SEC and the Receiver, and are designed to mislead the court as they have in the past.

The cases on which the SEC relies resulted in orders following evidentiary hearings at which the defendant was represented by counsel.

The SEC misrepresents the record respecting its use of confidential informants. The defendants in the criminal case, including Mr. Lauer, presented strong evidence that contradicted the SEC's denial that it used informants. But in any event the issue as it related *to Mr. Lauer* was different. It was that Barbarosh violated his right to counsel by injecting himself in his attorney-client relationship on behalf of the SEC. Judge Jordan, after hearing the evidence, denied the motion to dismiss the indictment because there were credibility issues, not because he accepted the SEC's version. As usual the SEC presents just a portion of the evidence. After a trial before a judge and a jury, Mr. Lauer and Martin Garvey were promptly acquitted by the jury without the defendants even having presented a defense on the merits.

The SEC blithely states that Mr. Lauer knew all the evidence eight years ago and could have raised it then, but conveniently omits stating what Mr. Lauer supposedly knew and did not know in 2004. He certainly did not know that the SEC was invading his attorney-client privilege. The quoted portion of its reply – which the SEC does not mention

– was part of a motion to compel discovery directed only at two of Mr. Lauer's codefendants, and did not directly concern Mr. Lauer. Nothing was said about invading Mr. Lauer's attorney-client privilege or intercepting confidential and privileged communications between Mr. Lauer and his attorney. The most conspicuous feature of the Reply quoted by the SEC is that it once again carefully concealed the invasion of Mr. Lauer's rights. DE 2703, at 15. Mr. Lauer was fighting dozens of the SEC's and the Receiver's lawyers and investigators all alone. Not only did he have his rights violated, but the SEC misled him as well.

The SEC's reliance on the opinion of the Eleventh Circuit in this case is bizarre, in view of Mr. Lauer's complaint. Mr. Lauer is complaining *about* the incomplete and distorted record, from which the SEC carefully excluded and concealed the very facts on which his motion relies until they emerged much later during the course of his criminal trial before Judge Jordan. His complaint is that the record greatly overstates the SEC's case because it concealed material facts and committed a fraud on the court. The SEC fraudulently represented that it was going to provide the testimony of witnesses that it knew would not testify on its behalf and would, indeed, accuse the SEC of misrepresentations and other serious misconduct.

Mr. Lauer's authorities speak for themselves and have the merit of dealing with the specific issues before the court. The SEC's are little more than a recitation of general rules that no one can dispute in the form it presents them, as evidenced, *inter alia*, by United *Student Aid Funds, Inc. v. Espinosa*, *supra*, and cases that make the cogent point that a Rule 60 motion is not a substitute for an appeal. It singularly fails to come to grips with the incontestable claim that Mr. Lauer was deprived of his constitutional right to due process and that alone prima facie satisfies Rule 60(b)(3) & (4).

Respectfully submitted,


Michael Lauer, pro se

By _____
DAVID M. DORSEN
Suite 500
2900 K Street, N.W.
Washington, DC 20007
Tel: 202 204-3706
Fax: 202 204-1001
Email: dorsen35@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of March, 2013, a true and correct copy of the foregoing has been sent via United States Mail to:

Christopher Martin, Esq.
Securities & Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL 33131

David Bane, Esq.
Hunton & Williams
1111 Brickell Avenue
Suite 2500
Miami, FL 33131

David M. Dorsen

# EXHIBIT 1



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

OFFICE OF THE
GENERAL COUNSEL

Stop 9612                                    March 13, 2013

David M. Dorsen
2900 K Street, N.W., Suite 500
Washington, D.C. 20007

Re:    Appeal, Freedom of Information Act (FOIA) Request No. 2012-10548

Dear Mr. Dorsen:

I am responding to your November 13, 2012, Freedom of Information Act appeal of the decision of the FOIA/Privacy Act Officer, Securities and Exchange Commission, to withhold documents submitted by Commission staff to the Commissioners related to a civil complaint against Michael Lauer as well as records reflecting any vote to authorize an investigation and filing of the civil complaint against Mr. Lauer. On November 5, 2012, the FOIA Officer asserted Exemption 5, 5 U.S.C. 552(b)(5), to withhold responsive records. In your November 13 appeal, as further clarified on November 16, you limited the scope of the request to solely those records reflecting the "collective vote of the Commissioners" to authorize an investigation and civil action. As narrowed on appeal, your request excludes any communications from Commission attorneys and staff to the Commission. I have reviewed your appeal and have determined to exercise my discretion and to release the seriatim vote authorizing the filing of a civil action and a copy of the Formal Order of Investigation, both of which are enclosed. This discretionary release should not be interpreted as a waiver of any applicable exemption should you make a request for similar information in the future.

For the Commission
by delegated authority,

Richard M. Humes
Associate General Counsel

Enclosure

NON-PUBLIC

UNITED STATES OF AMERICA
before the
SECURITIES AND EXCHANGE COMMISSION

July 7, 2003

| | | |
|---|---|---|
| In the Matter of | : | |
| | : | **ORDER DIRECTING PRIVATE** |
| LANCER OFFSHORE, INC. | : | **INVESTIGATION AND** |
| | : | **DESIGNATING OFFICERS** |
| FL-02939 | : | **TO TAKE TESTIMONY** |
| | : | |

I

The staff has reported information to the Commission that tends to show that:

A.    Three hedge funds started in 1994, 1995 and 1999, that are not registered with the Commission, - - Lancer Partners LP, Lancer Offshore, Inc., and The OmniFund, Ltd. (collectively referred to as the "Lancer Funds") - - offered investments to the public, in the form of limited partnership interests or shares, the proceeds of which were used by the Lancer Funds to primarily invest in small and mid-cap companies.  At their peak, the Lancer Funds reportedly managed over $1.2 billion.

B.    At all relevant times, Michael Lauer ("Lauer"), through his management companies, Lancer Management Group LLC and Lancer Management Group II LLC ("Lancer Management"), operated the Lancer Funds and served as its investment manager.  Lauer is the founder, sole manager and principal owner of Lancer Management.

C.    While engaged in the offer and sale, and in connection with the purchase and sale of securities, in the form of limited partnership interests or shares, Lauer and Lancer Management and certain of their present and/or former officers, directors, employees, agents, affiliates and other persons or entities may have, directly or indirectly, employed devices, schemes or artifices to defraud; obtained money or property by means of, or otherwise may have made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, transactions, practices, or courses of business which would and did operate as a fraud or deceit upon purchasers and others concerning, among other things, manipulative trading practices, the value of the Lancer Funds portfolios, the manner of their operations, specific portfolio holdings, and management's background.

D.    From at least 2000 to July 2003, Lauer, Lancer Management, and other persons or entities associated with them, in connection with them or their business as an investment adviser, may have, directly or indirectly, employed devices, schemes or artifices to defraud any client or prospective client; or engaged in transactions, practices or courses of business which have operated or would operate as a fraud or deceit upon any client or prospective client, concerning, among other things, manipulative trading practices, the value of the Lancer Funds portfolios, the manner of their operations, specific portfolio holdings, and management's background.

E.    While engaged in the activities set forth above, Lauer and Lancer Management and certain of their present and/or former officers, directors, employees, agents, affiliates and other persons or entities, directly or indirectly, made use of the mails, and the means and instruments of transportation and communication in interstate commerce, and of the means and instrumentalities of interstate commerce, or the facility of a national securities exchange.

II.

The Commission, having considered the staff's report and deeming such acts and practices, if true, to be a possible violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act"), finds it necessary and appropriate and hereby:

**ORDERS**, pursuant to the provisions of Section 20(a) of the Securities Act, Section 21(a) of the Exchange Act and Section 209(a) of the Advisers Act, that a private investigation be made to determine whether the aforesaid persons, entities, or others have engaged or are about to engage in any of the reported acts, or practices or in any acts or practices of similar purport or object; and

**IT IS FURTHER ORDERED**, pursuant to the provisions of Section 19(c) of the Securities Act, Section 21(b) of the Exchange Act and Section 209(b) of the Advisers Act, that for the purposes of such investigation David Nelson, Glenn S. Gordon, John C. Mattimore, Nicholas A. Monaco, Eric R. Busto, Robbie L. Mayer, Terence M. Tennant, Fernando Torres, Trisha D. Sindler, Teresa J. Verges, Kerry A. Zinn, Robert K. Levenson, Alise Johnson, Chris Martin, Jon Jordan, and each of them, are hereby designated officers of the Commission and empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require the production of any books, papers, correspondence,

2

memoranda, contracts, agreements, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

By the Commission.


Jonathan G. Katz
Secretary


By: Jill M. Peterson,
    Assistant Secretary

3

PRI ILEGED & CONFIDENTIAL

REQUEST FOR COMMISSION ACTION

Date:      June 27, 2003                          Control No.: S - 03 - 280 - ENF
SUBJECT/S: Lancer Offshore, Inc. (FL-02939)

**REQUESTED:** That the Commission (1) authorize the staff to file an emergency civil action against Michael Lauer, Lancer Management Group LLC and Lancer Management Group II LLC (collectively referred to as "Lancer Management").

N/R

(x)      SERIATIM CONSIDERATION - Joint deliberation by the members of the Commission on this matter is unnecessary, impracticable, or contrary to the requirements of agency business, pursuant to the provisions of 17 CFR 200.42(a).

( )      DUTY OFFICER CONSIDERATION - Pursuant to the provisions of 17 CFR 200.43(b).

( )      EMERGENCY CALENDAR CONSIDERATION FOR:

Action Requested By: July 7, 2003
TIMING ISSUES (Complete only if applicable)
   ( X ) REASON EXPEDITED ACTION IS REQUESTED: Lauer and Lancer Management remain in control of substantial investor assets.  A temporary restraining order is needed to ensure that the Court considers this matter on an expedited basis.
   ( ) EXTERNAL DEADLINE:

_____
Requesting Division Director

Ast Secretary
Duty Officer Commissioner

Date: _____

| | Seriatim Commission Action | | | Duty Officer Action | | Deferred for Regular Calendar |
|---|---|---|---|---|---|---|
| | Apprd | Date | Disapprd | Affirmed | Date | |
| Chairman Donaldson | KD/PVb | 7/7/03 | | | | |
| Commissioner Glassman | | | | | | |
| Commissioner Goldschmid | | 7/3/03 | | | | |
| Commissioner Atkins | | | | | | |
| Commissioner Campos | RC/HH | 7/7/03 | | | | |

Date of Action _____

* change on termative

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-80612-Civ-MARRA

SECURITIES AND EXCHANGE COMMISSION,  )

    Plaintiff,  )

        v.  )

MICHAEL LAUER,  )

    Defendant.  )

## DEFENDANT MICHAEL LAUER'S MOTION TO AMEND REPLY TO SEC'S OPPOSITION TO MOTION TO VACATE THE JUDGMENT AND DISMISS COMPLAINT AND AMENDMENT THERETO

On March 29, 2013, in further response to a FOIA request, the SEC provided a copy of the Request for Commission Action that included under "REQUESTED" the third numbered item as well as the first, attached hereto as Exhibit 1-A. Item (3) reads: "(3) authorizes the staff to name Lancer Offshore, Inc., Lancer Partners LP, The OmniFund, Ltd., LSPV Inc., and LSPV, LLC as relief defendants." Mr. Lauer hereby moves to supplement with Exhibit 1-A and this memorandum his reply to the SEC's opposition to his motion to vacate the judgment and dismiss the complaint.

Exhibit 1-A alone provides sufficient basis to grant Mr. Lauer's motion.[1] This document shows that the Commission authorized the staff to include the hedge funds as "relief defendants," which the staff did. The definition of "relief defendant" was recently stated in *S.E.C. v. Founding Partners Capital Mgmnt.*, 639 Supp.2d 1291, 1293 (M.D. Fl. 2009) (citations omitted):

> A relief defendant, sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation, but may be joined in the lawsuit to aid the recovery of relief. . . . A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate

---

[1] Mr. Lauer refers the court to his argument in his reply regarding the sufficiency of the Commission's purported authorization by a minority of the Commissioners.

claim to those funds. . . . "[N]o cause of action is asserted against a nominal defendant."

The reason for these requirements is that a person who engaged in wrongdoing and has a legitimate claim to those funds would have to be named as a defendant in order for the plaintiff to obtain appropriate relief against him. Based on *Founding Partners* (and cases it cites), which granted the relief defendants motion to dismiss the complaint under Rule 12(b)(6), it is highly likely that the three hedge funds could have successfully moved to dismissed the complaint against them. Whether or not they received ill-gotten gains (which is doubtful even under the plaintiff's theory), they clearly had a legitimate claim to the funds they held, as a reading of the complaint itself demonstrates.

The hedge funds did not move to dismiss the complaint for the obvious reason that the SEC and the receiver, working hand in hand, were running the hedge funds. They were exercising full control and were adamantly excluding anyone else from participating in the decisionmaking involving the funds, whether the directors, Mr. Lauer (who was not a director, despite assertions to the contrary), or other investors. Indeed, the receiver was collecting tens of millions of dollars in legal fees for his activities relating to the funds. For Mr. Lauer to succeed in this motion, however, it is not necessary for the court to decide that the funds had a valid ground on which a disinterested manager of the funds could have successfully moved to dismiss the complaint.

The reason why that is not necessary is that naming the innocent hedge funds as relief defendants did not authorize the SEC or anyone else, including a receiver chosen by the SEC, to assume control over the hedge funds and manage them, including liquidating most of their assets. Both the Commission and the complaint acknowledged that the hedge funds, acting under the control of their independent directors, did nothing wrong. After all, they were *relief* defendants. As a matter of fact, the complaint alleges that Mr. Lauer and Lancer Management overcharged the funds, which made them *victims*. By what right, then, did the SEC seek, and the district court

2

appoint, a receiver of the three hedge funds, particularly on the basis of an *ex parte* hearing and without notice to the funds and their directors! DE 1 at 20, 18. As Mr. Lauer has demonstrated, an ex *parte hearing* is no hearing at all for purposes of due process.

Improper actions taken with respect to the hedge funds, in which Mr. Lauer was the largest investor, including having invested his entire retirement funds in them, has resulted in enormous prejudice to the funds and their investors, especially Mr. Lauer. The Commission's purported authorization did not sanction the actions taken with respect to the funds by the SEC. The SEC's improprieties provide compelling grounds for the court to grant Mr. Lauer's motion to vacate the judgment and dismiss the complaint. If the court is not prepared to grant Mr. Lauer's motion at this time, it is also the reason why the court should be suspicious of the SEC's refusal to produce documents in discovery and should grant Mr. Lauer's discovery requests in full, including taking relevant depositions and obtaining other discovery from the SEC and its lawyers and the receiver and his colleagues.

Respectfully submitted,

Michael Lauer, pro se

By _____

DAVID M. DORSEN
Suite 500
2900 K Street, N.W.
Washington, DC 20007
Tel: 202 204-3706
Fax: 202 204-1001
Email: dorsen35@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2013, a true and correct copy of the

foregoing has been sent via United States Mail to:

Christopher Martin, Esq.
Securities & Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL 33131

David Bane, Esq.
Hunton & Williams
1111 Brickell Avenue
Suite 2500
Miami, FL 33131

David M. Dorsen

# EXHIBIT 1-A



**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
*Office of the General Counsel, Washington, D.C. 20549-9612*

*Kevin D. Solonsky*
*Senior Counsel*

March 28, 2013

BY OVERNIGHT DELIVERY

David M. Dorsen
Sedgwick LLP
2900 K Street, N.W., Suite 500
Washington, D.C. 20007-5127

               Re:    Dorsen v. SEC, D.D.C. No. 13-288

Dear Mr. Dorsen,

     Enclosed, please find the June 27, 2003 Seriatim Cover Sheet with the additional information you requested.

                       Very truly yours,

                       Kevin D. Solonsky
                       (202) 551-5014

Enclosure

PRIVILEGED & CONFIDENTIAL

REQUEST FOR COMMISSION ACTION

Date: June 27, 2003                          Control No.: S - 03 - 280 - ERAF
SUBJECT/S: Lancer Offshore, Inc  (FL-02939)

REQUESTED: That the Commission (i) authorize the staff to file an emergency civil action against Michael Lauer, Lancer Management Group LLC and Lancer Management Group II LLC (collectively referred to as "Lancer Management");

, (3)authorize the staff to name Lancer Offshore, Inc., Lancer Partners LP, The OmniFund, Ltd., LSPV Inc., and LSPV, LLC as relief defendants

---

(x)   SERIATIM CONSIDERATION - Joint deliberation by the members of the Commission on this matter is unnecessary, impracticable, or contrary to the requirements of agency business, pursuant to the provisions of 17 CFR 200.42(a).

( )   DUTY OFFICER CONSIDERATION - Pursuant to the provisions of 17 CFR 200.43(b).

( )   EMERGENCY CALENDAR CONSIDERATION FOR:
Action Requested By: July 7, 2003
TIMING ISSUES (Complete only if applicable)
   ( X) REASON EXPEDITED ACTION IS REQUESTED: Lauer and Lancer Management remain in control of substantial investor assets.  A temporary restraining order is needed to ensure that the Court considers this matter on an expedited basis.
   ( ) EXTERNAL DEADLINE:

_____
Requesting Division Director

_____ Secretary
Duty Officer Commissioner
Date:

| | Seriatim Commission Action | | | Duty Officer Action | | Deferred for Regular Calendar |
|---|---|---|---|---|---|---|
| | Apprd | Date | Disapprd | Affirmed | Date | |
| Chairman Donaldson | ND/PVB | 7/7/03 | | | | |
| Commissioner Glassman | | | | | | |
| Commissioner Goldschmid | | 7/3/03 | | | | |
| Commissioner Atkins | | | | | | |
| Commissioner Campos | | 7/7/03 | | | | |
| | | | | Date of Action | | |

change on texmative

# EXHIBIT G

**DAVID M. DORSEN**
Suite 500
2900 K Street, N.W.
Washington, DC 20007
Tel:  202-204-3706 (o)
Tel:  202-965-2086 (h)
Email:  David.Dorsen@sedgwicklaw.com


David M. Dorsen was graduated from Harvard College and Harvard Law School, where he was an editor of the Harvard Law Review.  In addition to years in private practice, Dorsen spent five years as Assistant United States Attorney in the Southern District of New York in the criminal division under Robert M. Morgenthau; four years as Deputy or First Commissioner in the Department of Investigation in the Administration of N.Y.C. Mayor John V. Lindsay; and two years as Assistant Chief Counsel of the Senate Watergate Committee under Senator Sam Ervin and Professor Samuel Dash (Chief Counsel) in 1973-74.

Dorsen's private practice has included being an associate at Kaye Scholer, New York, N.Y. (1960-64); partner at Sachs, Greenberg & Tayler, Washington, DC (1974-1990); Of Counsel at Hughes & Hubbard, Washington, D.C. (1990-94); private practice (1994-98); Of Counsel at Wallace, King, Washington, D.C. (1998-2011); and Of Counsel, Sedgwick, LLP, Washington, D.C. (2011-).

Dorsen's cases have included, in addition to many while an Assistant U.S. Attorney, the libel case brought by General William C. Westmoreland against CBS and Mike Wallace (where he was counsel to General Westmoreland) and a class-action sex-discrimination case where he secured a judgment of over $20 million for 325 women employees of the Government Printing Office, at the time the largest against the United States in a sex-discrimination suit.  Dorsen has also represented John Dean and Maureen Dean in a libel case against G. Gordon Liddy and others and the Hunt brothers and their Saudi partners during a portion of the aftermath of the silver meltdown.  Since January 2012 Dorsen has represented former hedge-fund asset manager Michael Lauer against the SEC in the U.S. Court of Appeals for the Eleventh Circuit and in an unsuccessful petition for certiorari in the United States Supreme Court.

In 2012 Harvard University Press published Dorsen's biography of Judge Henry F. Friendly (1903-86) of the U.S. Court of Appeals for the Second Circuit, entitled, "Henry Friendly, Greatest Judge of His Era."  Judge Richard A. Posner, who encountered Friendly when he became a judge himself in 1981 and the two rapidly became close friends, wrote the foreword.  Judge Posner's foreword states:

"There are leaders and followers in adjudication as in other activities, and it is of a consummate leader that David Dorsen has produced a consummate biography." Green Bag has awarded the book its award for exemplary legal writing for 2012.  In October 2012, Dorsen presented the annual Learned and Augustus Hand Lecture in the U.S. Court of Appeals for the Second Circuit.  Dorsen has been a participant in programs hosted by, among others, Harvard Law School, George Washington University Law School, several United States Courts of Appeals, and several law firms.  Reviews of the book have been uniformly favorable.

Dorsen has been an Adjunct Professor at the Georgetown Law Center (three years), George Washington University Law School (two years), where he taught Evidence, and a visiting lecturer at the Terry Sanford Institute for Public Policy at Duke University (seven years), where he conducted a seminar on the role of the legal system and congressional investigations in the Watergate and subsequent government scandals.  His article, "Judges Henry Friendly and Benjamin Cardozo; A Tale of Two Precedents" appears at 31 *Pace L. Rev.* 599 (2011); his article, "Eating His Cake and Having It, Too; Judge Henry Friendly and Tax Law," will appear at 32 *Virginia Tax Rev.* ___ (2013); his "Cross-Examining the Well-Prepared Witness," appears as a chapter in *Take the Witness: The Experts Speak.*

During the Clinton-Lewinsky contretemps, Dorsen wrote a weekly column on its legal aspects, entitled, "The Scandal Watch," for *The Hill* newspaper.  He was a restaurant reviewer or Wine & Food Editor of the *Washingtonian Magazine*, the city magazine of Washington, D.C., for over 25 years; a one-third owner of a thoroughbred racing stable named The Nonsequitur Stable, LLC; and associate producer of "Tolstoy," a play written by James Goldman starring J. Murray Abraham and Gemma Jones, which ran at the Aldwych in London in 1997.  His current projects include a book on certain opinions of Justice Scalia; a novel about a senior district judge; and an opera based on Ernest Hemingway's "For Whom the Bell Tolls," for which Dorsen has written the libretto.

Dorsen is admitted, *inter alia*, in the United States Supreme Court, the Second, Fourth, Eleventh, and District of Columbia Circuits, and the U.S. district courts for the Southern and Eastern Districts of New York, the District of Columbia, and Maryland.  Dorsen is a member of the bars of New York and Washington, D.C.