# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID M. DORSEN,

        Plaintiff,

        v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Defendant.

Civil Action No.  13-00288 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Pending before the Court is the plaintiff David M. Dorsen's motion for attorneys' fees and costs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(ii)(II), and Federal Rule of Civil Procedure 54, against the defendant Securities and Exchange Commission ("SEC").  *See* Pl.'s Mot. for Att'ys Fees ("Pl.'s Mot.") at 1, ECF No. 5.  The underlying FOIA request sought records which the plaintiff believed were relevant to overturn a substantial civil judgment in favor of the SEC against the plaintiff's client, Michael Lauer.  *See generally id.* at 4–12.  Less than one month after the plaintiff initiated this lawsuit, the defendant released three responsive documents, totaling five pages, that had previously been withheld, *see* Pl.'s Mot. Exs. B, C,[1] prompting the plaintiff to assert that he is a prevailing party both eligible and entitled to the attorneys' fees and costs demanded.  *Id.* at 1–3, 13–14.  For the reasons set forth below, the plaintiff's motion is denied.

---

[1] The defendant released two documents on March 13, 2013, reflecting the Commission's authorization, based on staff information, to conduct an investigation of Lauer and his hedge funds and the Commission's vote on the same. *See* Pl.'s Mot. Ex. B. On March 28, 2013, the defendant released a version of a previously released document with fewer redactions. *See id.*, Ex. C.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Protracted SEC Litigation

For over a decade, Michael Lauer and the SEC have been parties to litigation that began in 2003, when the SEC authorized a formal investigation and the filing of a civil complaint against Lauer and two companies operating as hedge fund asset managers, alleging that Lauer overstated the value of the funds and manipulated the value of the funds' securities in order to increase his fees. *See* Pl.'s Mot. at 4–12; Def.'s Opp'n Mot. Att'ys Fees (Def.'s Opp'n) at 2, ECF No. 8; *see also SEC v. Lauer*, No. 9:03-cv-80612, 2008 WL 4372896, at *2–13 (S.D. Fla. Sept. 24, 2008), *aff'd*, 478 F. App'x 550 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 545 (2012). During the course of the SEC civil action, Lauer's assets were frozen, and as a result Lauer defended himself *pro se* throughout the civil litigation. Pl.'s Mot. at 5. On September 24, 2008, the U.S. District Court for the Southern District of Florida granted summary judgment in favor of the SEC and ordered Lauer to pay $62,596,807.74 in disgorgement, prejudgment interest, and a civil penalty. *See SEC v. Lauer*, 2008 WL 4372896, at *26–27; Def.'s Opp'n at 2–3; Pl.'s Mot. at 10. On appeal of the judgment to the U.S. Court of Appeals for the Eleventh Circuit, Lauer retained the plaintiff for oral argument and for court-ordered supplemental briefing. Pl.'s Mot. at 10–11.

The Eleventh Circuit affirmed the district court's decision in all respects on April 19, 2012, and the Supreme Court denied his petition for certiorari on October 29, 2012. *Id.* at 11. Shortly thereafter, in early 2013, the plaintiff filed two motions on Lauer's behalf to vacate the judgment and dismiss the complaint on grounds, *inter alia*, that the SEC had not properly

authorized the filing of the suit against Lauer. *Id.*; Def.'s Opp'n at 3–4.[2] Both motions were

denied.[3]

### B. FOIA Lawsuit

Following the Eleventh Circuit's denial of Lauer's appeal and while his petition for writ

of certiorari was pending, the plaintiff filed a FOIA request on his client's behalf with the SEC

on August 27, 2012, seeking disclosure of any agency records:

> (1) submitted by the SEC staff to the Commissioners in the matter;
> and (2) that indicate that by vote the Securities and Exchange
> Commission authorized a formal investigation of Michael Lauer
> and the filing of a civil complaint against him. In particular, we
> seek the dates and nature of the actions taken or authorized by the
> Commission as reflected in the available documents.

Def.'s Opp'n Ex. A (Letter, dated August 27, 2012). On November 5, 2012, the defendant

advised the plaintiff that documents responsive to his request were being withheld under FOIA

Exemption 5, 5 U.S.C. § 552(b)(5), as the documents were "protected from disclosure by the

attorney work-product, deliberative process and/or attorney-client privileges." Def.'s Opp'n Ex.

B (Letter, dated November 5, 2012, from Dave Henshall, SEC FOIA Branch Chief, to plaintiff),

at 1.

The plaintiff appealed this decision by letter to the defendant on November 13, 2012.

Def.'s Opp'n Ex. C (Pl.'s Appeal Letter); *see also* Def.'s Opp'n at 4–5. In his appeal, the

plaintiff amended the scope of the request by "narrow[ing] and limit[ing]" the request to "any

and all documents that describe or reflect the collective vote of the Commissioners of the

---

[2] *See* Mot. to Vacate J. and Dismiss Compl., *SEC v. Lauer*, No. 9:03-cv-80612 (S.D. Fla. Sept. 24, 2008), ECF No. 2676 (filed February 20, 2013); Mot. to Vacate J. on Grounds of Judicial Misconduct, *SEC v. Lauer*, No. 9:03-cv-80612 (S.D. Fla. Sept. 24, 2008), ECF No. 2677 (filed February 20, 2013).

[3] Order Denying Mot. to Vacate J. on Grounds of Judicial Misconduct, *SEC v. Lauer*, No. 9:03-cv-80612 (S.D. Fla. Sept. 24, 2008), ECF No. 2723 (filed June 13, 2013); Omnibus Order, *SEC v. Lauer*, No. 9:03-cv-80612 (S.D. Fla. Sept. 24, 2008), ECF. No. 2724 (filed June 13, 2013).

Securities and Exchange Commission that authorized both a formal investigation of Michael Lauer and the commencement of a civil action against Michael Lauer," including "just the date and the vote." *See* Def.'s Opp'n Ex. C, at 1. The plaintiff explained that "[a]s narrowed, the appeal does not seek to learn the votes by the individual Commissioners" or "memoranda, letters, or instructions that may have accompanied the Commissioners' votes." *Id.*

Over three months after submitting the administrative appeal, with no response from the defendant, the plaintiff filed the instant suit on March 5, 2013, seeking disclosure of documents "[a]s narrowed during the administrative proceeding," namely, "for documents that reflect the decision and the date of the decision of the SEC Commission or any individual (or Duty) Commissioner to authorize the filing of" the civil action against Lauer in the Southern District of Florida. *See* Complaint ("Compl.") ¶ 18, ECF No. 1. On March 13 and 28, 2013, the defendant released a total of five pages of three responsive documents that the plaintiff had requested in his administrative appeal. *See* Pl.'s Mot. Exs. B, C. The plaintiff subsequently advised this Court that the merits of the case were resolved. *See* Notice of Resolution of the Merits of the Case ("Notice") at 1, ECF No. 7. The plaintiff's motion for attorneys' fees is now before the Court. *See* Pl.'s Mot. at 1.

## II. LEGAL STANDARD

The FOIA authorizes the award of attorneys' fees reasonably incurred by a plaintiff who is in litigation to obtain "the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B), when "the complainant has substantially prevailed," *id.* at § 552(a)(4)(E)(i). The D.C. Circuit has construed this statutory provision as "naturally divid[ing] the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir.

2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Thus, to obtain attorneys' fees under the FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984) ("[E]ligibility alone is not enough. . . . the complainant must [also] show that he or she is 'entitled' to an award.").

To satisfy the first requirement regarding eligibility for attorneys' fees, a claimant must show that he "substantially prevailed" in the underlying FOIA litigation. *See* 5 U.S.C. § 552(a)(4)(E)(i). The statute provides that the claimant "substantially prevail[s]" by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. at § 552(a)(4)(E)(ii).[4]

If the plaintiff has "substantially prevailed and thus may receive fees . . . the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524 (emphasis in original) (quotation marks and citations omitted). "This circuit has long applied a multi-factor standard" involving consideration of "[f]our non-exclusive factors:" "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records;

---

[4] The term "not insubstantial," which was added as part of the FOIA amendments in the OPEN Government Act of 2007, is not defined in the statute. *See* Pub. L. No. 110-175, 121 Stat. 2524 (codified at 5 U.S.C. § 552 (Supp. III 2009)) [hereinafter 2007 Act]. The House-passed version of these FOIA amendments did not use this term and, instead, provided that a claimant qualified for attorneys' fees upon a "voluntary or unilateral change in position by the opposing party, in a case in which the complainant's claim or defense was not frivolous." H.R. Rep. No. 110-45, at 15 (2007) (Report by House Committee on Oversight and Government Reform). The Senate-passed version of the bill, which was ultimately enacted as the 2007 Act, adopted the current language, 153 CONG. REC. S15702 (2007), which the lead sponsor of the legislation, Senator Patrick Leahy, explained "would not allow the requester to recover attorneys' fees if the requester's claim is wholly insubstantial," *Id.* at S15704 (statement of Sen. Leahy). Inquiry as to whether the claim is "not insubstantial" is "properly considered under the entitlement prong of the fee analysis, not the eligibility prong." *Judicial Watch, Inc. v. U.S. Dep't of Justice,* 878 F. Supp. 2d 225, 233 (D.D.C. 2012) (citing *Brayton*, 641 F.3d at 526).

and (4) the reasonableness of the agency's withholding' of the requested documents." *McKinley*, 739 F.3d at 711 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992), *superseded by statute*, 5 U.S.C. § 552(a)(4)(E)(i), *as recognized in Summers v. U.S. Dep't of Justice*, 569 F.3d 500, 502 (D.C. Cir. 2009)); *see also Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995). No single factor is dispositive. *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 234 (D.D.C. 2012); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) (citing *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 20 (D.D.C. 2004)). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094 (citing *Church of Scientology of California v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981)); *see also Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) ("Balancing these factors is a matter for the district court.").

## III. DISCUSSION

At the outset, the Court makes clear that any evaluation of the eligibility and entitlement prerequisites for attorneys' fees in this case must be focused on the circumstances of Michael Lauer. Although Lauer's attorney made the underlying FOIA request, is named as the plaintiff in the complaint, and filed the pending motion for attorneys' fees, these actions were taken on behalf of Lauer. *See* Compl. ¶ 3 ("Plaintiff David M. Dorsen is an attorney at law who is the attorney for Michael Lauer [and]… is pursuing this action on behalf of Mr. Lauer"); Pl.'s Mot. at 1 (noting that "[p]etitioner filed a FOIA request … on behalf of Michael Lauer").[5] Indeed, if this motion were successful, any attorneys' fees would be awarded to Lauer, not to the plaintiff. *See Astrue v. Ratliff*, 130 S.Ct. 2521, 2526 (2010) (attorneys' fees are awarded to the prevailing party

---

[5] Notably, the plaintiff would not be entitled to attorneys' fees if he were proceeding *pro se*. *See Burka v U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1289 (D.C. Cir 1998) (litigants who are attorneys are not entitled to attorneys' fees under FOIA).

on whose behalf the litigation was initiated).  Thus, the Court will first examine whether Lauer is

eligible for attorneys' fees as a "prevailing party" before turning to an analysis of the factors

relevant to consideration of his entitlement to attorneys' fees.  For the reasons set out below,

even if Lauer were eligible for attorneys' fees, he is not entitled to this award and, consequently,

the motion brought on his behalf by the plaintiff is denied.

### A.    LAUER IS ELIGIBLE FOR ATTORNEYS' FEES

The plaintiff addresses the eligibility requirement in an abbreviated manner, relying

entirely on the timing sequence of his FOIA request and subsequent litigation.  The plaintiff

argues summarily that Lauer's eligibility for attorneys' fees "is clear" because the defendant

initially withheld responsive documents and only produced them shortly after the plaintiff filed

suit.  *See* Pl.'s Mot. at 2.  He is nonetheless correct that while the agency's release of responsive

records was not made pursuant to "a judicial order, or an enforceable written agreement or

consent decree," the timing of the defendant's production shortly after initiation of this lawsuit

demonstrates that this suit prodded "a voluntary or unilateral change in position by the agency."

*See* 5 U.S.C. § 552(a)(4)(E);  *see also* Pl.'s Reply Supp. Att'ys Fees ("Pl.'s Reply") at 3, ECF

No. 9 (noting that the plaintiff's complaint "was meritorious and resulted in the SEC's providing

the documents sought.").

 In assessing whether a claimant is a "prevailing party" under the FOIA statute, "[i]t is

well established in this circuit that this inquiry is largely a question of causation."  *See Weisberg*,

745 F.2d at 1496.  The D.C. Circuit has long employed a "catalyst theory," which evaluates

whether a plaintiff has substantially prevailed based on whether he or she "substantially caused

the government to release the requested documents before the final judgment."  *Brayton*, 641

F.3d at 524–25.[6]  Thus, a plaintiff substantially prevails when he or she can demonstrate that "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology*, 653 F.2d at 587; *see also Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) (under the catalyst theory "plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records"); *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (to be eligible the plaintiff must show that the "litigation substantially caused the requested records to be released"); *Brayton*, 641 F.3d at 524–25 (finding that defendant substantially prevailed under FOIA where lawsuit was catalyst for government releasing the requested documents).  The plaintiff "must show that the prosecution of the action could reasonably be regarded as necessary to obtain the information." *See Weisberg*, 745 F.2d at 1496 (quoting *Cox v. U.S. Dep't of Justice,* 601 F.2d 1, 6 (D.C. Cir. 1979)).

Causation requires more than correlation and, consequently, the D.C. Circuit has made clear that, in the FOIA attorneys' fees context, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Id*.  Even if not dispositive, the timing of a release of responsive records after the filing of a FOIA lawsuit "is certainly a salient factor in the analysis." *Elec. Privacy Info. Ctr.*, 811 F. Supp. 2d at 232 (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.,* 2009 WL 1743757, at *3 (D.D.C. 2009)) (quotation marks omitted).  Something "more than *post hoc, ergo propter hoc* must be

---

[6] The catalyst theory was utilized by this Circuit until 2001, when the Supreme Court held that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded by resurrecting the catalyst theory for FOIA cases in the Open Government Act of 2007. *See Judicial Watch, Inc.*, 878 F. Supp. 2d at 231 n.2 (D.D.C. 2012) (citing *Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010)). "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form. The result is that plaintiffs can now qualify as 'substantially prevail[ing],' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims." *Brayton*, 641 F.3d at 525.

shown." *Public Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984).

For example, an agency's delay in response until after a lawsuit is filed may be due to factors

having nothing to do with the filing of the lawsuit but instead with administrative delays due to

backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity

of inter-agency searches and responses, or a combination of these factors. *See, e.g.*, *Church of*

*Scientology*, 653 F.2d at 588 (where "an unavoidable delay accompanied by due diligence in the

administrative process was the actual reason for the agency's failure to respond to a request, then

it cannot be said that the complainant substantially prevailed in [its] suit.") (quoting *Cox*, 601

F.2d at 6) (internal citations omitted); *Calypso Cargo, Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d

1, 5–6 (D.D.C. 2012) (finding that plaintiffs were not "eligible" for attorneys' fees because the

suit did not cause agency's release of documents, as shown by "detailed timeline" reflecting

"diligent, ongoing process that began before the initiation of the instant lawsuit" to respond to

FOIA request); *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009)

("The causation requirement is missing when disclosure results not from the suit but from

delayed administrative processing.").

 In the instant case, the defendant withheld all documents responsive to the plaintiff's

request based solely on the agency's assertion that the documents were exempt from disclosure.

Approximately three months after the plaintiff filed an administrative appeal, eight days after this

lawsuit was filed, and "one day after it received the Complaint," Def.'s Opp'n at 8, the defendant

made the first of two releases of responsive documents to plaintiff as an "exercise [of]

discretion" and without "a waiver of any applicable exemption." Pl.'s Mot. Ex. B.

Notwithstanding the close proximity in timing between the filing of the lawsuit and the release of

responsive records, the defendant argues that a causal nexus between the suit and the release of

the documents is missing since there is "no evidence that, in light of [the plaintiff's] narrowed and clarified request on appeal, the SEC would have denied his appeal." *See* Def.'s Opp'n at 8. The defendant makes no effort to argue that any administrative processing delays caused the delay in production of responsive records; indeed, the number of responsive documents totaling five pages is clearly not a voluminous amount. *See* Pl.'s Reply at 3; *cf. Elec. Privacy Info.*, 811 F. Supp. 2d at 232 (finding eligibility where production of "hundreds of pages" of documents seven months after initial FOIA request could reasonably be attributed to plaintiff filing suit one month prior to disclosure). Instead, the defendant's argument boils down to the assertion that if the plaintiff had patiently waited until resolution of the administrative appeal, he might have prevailed administratively on the narrowed scope of his request and, thus, the filing of the lawsuit did not "affect[] anything more than the timing of the release." Def.'s Opp'n at 8. In other words, even if the lawsuit expedited the release of the requested information, the defendant contends this falls short of showing that the lawsuit caused the defendant to release the documents.[7]

The defendant overlooks the significant flaw in this argument, namely, that it is predicated on the notion that the administrative appeal would have resulted in the release of responsive records. Given the SEC's assertion of proper withholding under Exemption 5 both in its original response to the plaintiff's FOIA request, by letter, dated November 5, 2012, and in its subsequent letter, dated March 13, 2013, making a "discretionary release," the prediction that

---

[7] The defendant relies upon *Republic of New Afrika v. FBI*, 645 F. Supp. 117 (D.D.C. 1986), to support its contention that a delay in producing documents is not sufficient to "constitute a basis for awarding" attorneys' fees. *See* Def.'s Opp'n at 8 & n.3. To the contrary, that case held that a claimant was entitled to attorneys' fees in part because his lawsuit "forced the [agency] to quicken the pace of its disclosures." *Republic of New Afrika*, 645 F. Supp. at 120. Two additional cases from outside this circuit on which the defendant relies refer to a plaintiff's entitlement, not his eligibility. *See Ellis v. United States*, 941 F. Supp. 1068, 1078, 1081 (D. Utah 1996) (finding that "plaintiffs have substantially prevailed on their FOIA claim," but that delay in producing documents was not tantamount to unreasonably withholding documents); *Frydman v. U.S. Dep't of Justice*, 852 F. Supp. 1497, 1503, 1505 (D. Kan. 1994) (holding that the plaintiff "substantially prevailed" but that delay in disclosure was not sufficient to show bad faith withholding of documents).

the plaintiff would have been successful on appeal appears purely speculative. *See* Def.'s Opp'n Ex. B; Pl's Mot. Ex. B; *see also Judicial Watch, Inc.*, 878 F. Supp. 2d at 232 ("[I]t was reasonable for [the plaintiff] to believe that the records would not be unconditionally released absent a lawsuit, given the [agency's] initial invocation of Exemptions"). Moreover, this prediction about the plaintiff's potential success on administrative appeal implicitly suggests that the released records were not properly subject to withholding under Exemption 5. The defendant cannot simultaneously argue that the documents would have been released in response to the plaintiff's appeal, *and* assert that the records were exempt from disclosure and, thus, were reasonably withheld. *See* Def.'s Opp'n at 8, 11–12. The defendant cannot have it both ways. Thus, the Court finds that the lawsuit did, in fact, prompt a speedier release of responsive records before the resolution of the appeal, as amply confirmed by the timing of the releases shortly after the initiation of this lawsuit.

Accordingly, the Court finds that the plaintiff has demonstrated that Lauer substantially prevailed in this case and is therefore eligible for an award of attorneys' fees.

## B.     LAUER IS NOT ENTITLED TO ATTORNEYS' FEES

Even if the plaintiff demonstrates that Lauer is eligible for an award of attorneys' fees, he must also show that Lauer is entitled to an award. *See Weisberg*, 745 F.2d at 1495. As noted, entitlement is determined under a balancing of four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government has a reasonable basis for withholding the requested information." *Cotton,* 63 F.3d at 1117.[8] In practice, the D.C. Circuit has "combined the second

---

[8] Some Judges on the D.C. Circuit have urged elimination of the four-factor test, *Morley v. CIA*, 719 F.3d 689, 690–91 (D.C. Cir. 2013) (Kavanaugh, J., concurring) (opining that "[w]e should ditch the four-factor standard"), on the grounds that this test has "no basis in the statutory text." *Id*. at 690 (citing *Davy v. CIA*, 550 F.3d 1155, 1166 (D.C. Cir. 2008) (Randolph, J., dissenting); *Burka*, 142 F.3d at 1293–94 (Randolph, J., concurring)). Moreover, these

and third factors into a single factor assessing whether a plaintiff has sufficient private incentive to seek disclosure of the documents without expecting to be compensated for it." *See McKinley*, 739 F.3d at 711 (quoting *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008)) (internal quotation marks omitted). Moreover, although the Circuit has instructed that no particular factor should be given disproportionate weight, in some circumstances the final factor may be dispositive. Specifically, the D.C. Circuit has made clear that "[i]f the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Davy*, 550 F.3d at 1162 (quoting *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)); *see also Chesapeake Bay Found, Inc.*, 11 F.3d at 216 ("[T]here can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct."), *abrogation on other grounds recognized by Davy*, 550 F.3d at 1159. Indeed, the Circuit recently confirmed the "long-established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a matter of law." *Brayton*, 641 F.3d at 526.

In applying the multi-factor test, as required by binding precedent in this Circuit, the Court finds that the plaintiff is not entitled to attorneys' fees because the plaintiff had a

---

Judges have pointed out that the multi-factor test was "deliberate[ly]" not included by Congress in the statutory text. *Id.* The conference committee removed language in the Senate's version of the attorneys' fees provision added in 1974, which language would have instructed courts to "consider the benefit to the public, if any, deriving from the case, the commercial benefit to the complainant and the nature of his interest in the records sought, and whether the Government's withholding of the records sought had a reasonable basis in law." *See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977) (citing 120 CONG. REC. S17014; H.R. Rep. No. 93-1380, at 9–10 (1974) (Conf. Rep.)); *see also Morley*, 719 F.3d at 690–91 (Kavanaugh, J., concurring). These Judges have concluded that the test "is arbitrary and inconsistent with the structure and purposes of FOIA." *Id.* at 691. Nevertheless, this test continues to be binding in application to cases before this Court.

commercial and personal interest for bringing suit even without reimbursement of fees, and the defendant's initial withholding was reasonable.

### 1. *Public Benefit*

The public benefit entitlement factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159; *see also McKinley*, 739 F.3d at 711 ("The first factor considers the significance of the contribution that the released information makes to the fund of public knowledge."). There is public benefit where release of the requested information "is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120 (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)). Generally, released documents have an insufficient public benefit when they pertain to such highly particularized interactions with an agency that non-participants would have only a limited interest in the records as a means of learning what the agency was doing. In other words, a mere increase in general public knowledge of governmental actions is generally not enough to show a public benefit. *Id.; see also Fenster*, 617 F.2d at 744 ("The release of any government document benefits the public by increasing citizens' knowledge of their government. Congress did not have this sort of broadly defined benefit in mind" under FOIA). For example, in *Cotton*, the D.C. Circuit found that the release of two Smithsonian museum shop documents did not provide a public benefit where the "sole purpose" for requesting the information was to "facilitat[e the plaintiff's] employment discrimination suit." *See* 63 F.3d at 1120. Similarly, in *Fenster* there was "little" public benefit in disclosure of a government manual to help contractors handle performance audits, since only contractors, and not the general public, would be interested in such documents. *See* 617 F.2d at 744–45. By contrast, in *Davy v. CIA*, the court found a great

public benefit to a claimant's request for information relating to the assassination of President John F. Kennedy. 550 F.3d at 1159.

Here, the plaintiff argues that there is a general public benefit to the release of the requested information because it will expose "lawlessness that is of major interest to the three branches of the government . . . and to the public at large." Pl.'s Mot. at 13. He further asserts that the public generally "benefits when justice is done and benefits further when improper activities are brought to light." *Id.* at 12. The Court acknowledges the public's interest in monitoring how the SEC conducts its business, particularly when exercising its enforcement powers by initiating investigations and civil actions, and, further, that the plaintiff's FOIA request would meet the FOIA's central purpose of providing some public scrutiny of this agency activity. Nevertheless, these public benefits are significantly limited given the particularized nature of the released information. Specifically, the released records reveal only the dates of the votes cast by specific members of the Commission and the order regarding Lauer, and others, resulting from that vote. *See* Pl.'s Mot. Exs. B, C. As the defendant points out, the documents "confirm[] a fact as to which there has never been any real issue: when the SEC brought a case against Lauer, the Commission had authorized the filing of the case." Def.'s Opp'n at 10.

The public knowledge gained by learning the date and result of SEC Commissioners' votes to investigate and sue Lauer is not a matter of significant or widespread public concern, such as the assassination of a former President, and is primarily relevant to Lauer in his attempt to vacate the civil judgment against him. While in this respect the released information has limited public benefit, it is also the case that such information about the SEC's exercise of its enforcement powers will virtually always be limited to particular targets. Although scrutiny of this agency activity through FOIA requests by individual targets may, therefore, fall short of the

general public benefit factor, some value attaches to the disclosure of the SEC's discrete decisions by shedding light on this enforcement activity and, in the aggregate, such information may provide significant public benefit. *See Morley*, 719 F.3d at 691 (Kavanaugh, J., concurring) (noting deficiencies in application of public benefit factor since "information sometimes becomes meaningful only when later pieced together with other information."). In sum, the public benefit factor neither favors nor disfavors an award of attorneys' fees to Lauer.[9]

### 2.    *Commercial Benefit and Nature of Interest*

Since the second and third entitlement factors—the commercial benefit of the request and the nature of the plaintiff's interest—both pertain to Lauer's stakes in the litigation, they are more easily evaluated together. *See Tax Analysts*, 965 F.2d at 1095. Where a plaintiff has a commercial benefit or a personal interest in pursuing litigation, "an award of fees is generally inappropriate" because there is already sufficient motivation for the claimant to bring suit without the promise of attorneys' fees. *See Fenster*, 617 F.2d at 743; s*ee also Cotton*, 63 F.3d at 1120 ("When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate.") (citation omitted). Courts have found that a plaintiff stands to gain a commercial benefit when he or she seeks documents that could aid his efforts in ongoing civil litigation. *See Republic of New Afrika*, 645 F. Supp 117, 121 (D.D.C. 1986); *Simon v. United States*, 587 F. Supp. 1029, 1033 (D.D.C. 1984). "The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery." *Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982); *see also Simon*, 587 F. Supp. at 1033 (noting that using FOIA "as a substitute for civil discovery . . . is not proper and this court will not encourage

---

[9] In making this assessment, the Court is acutely aware of the shortcomings in this factor identified by Judge Kavanaugh in *Morely*. Specifically, "the public-benefit factor is riddled with arbitrariness" since "the degree of public benefit may become apparent only years … after the litigation has ended," and "even if the information is of value only to a small group or segment of the public," it is unclear why those citizens should be treated "as second class in determining who gets attorney's fees." *Morley*, 719 F.3d at 691(Kavanaugh, J., concurring).

it by awarding fees."); *Republic of New Afrika*, 645 F. Supp at 121 (finding personal interest where plaintiff used FOIA requests to "circumvent civil discovery"). Ongoing litigation provides "sufficient incentive for parties to bring suit under FOIA regardless of whether fees and costs are recovered under the Act." *Id.*

The defendant argues that Lauer has a commercial interest in the FOIA litigation because his ultimate goal is to "obtain relief from a $63 million judgment against him." *See* Def.'s Opp'n at 10. The defendant further contends that Lauer has a personal interest because he is seeking the records to defend himself in his litigation against the defendant. *See id.* at 11. The plaintiff does not substantively contest the defendant's contentions, confirming that the defendant had "refus[ed] to produce in discovery" the requested documents during prior litigation, Pl.'s Mot. at 12, and that Lauer sought these documents to "vindicate himself," *id.*, and "rehabilitate" his image "in the eyes of the community," which he admits is "a personal, but not commercial, aspect of his efforts." Pl.'s Reply at 4. Moreover, the plaintiff concedes that his aim was to use the FOIA request to develop his arguments in support of his efforts to vacate the civil judgment against Lauer. *See* Pl.'s Mot. at 11–12. The plaintiff's stated motives are primarily commercial and personal interests, thus this factor weighs against an award of attorneys' fees.

### 3. *Reasonable Basis for Withholding Information*

Even if the plaintiff is otherwise eligible, attorneys' fees may not be awarded if the government "had a reasonable basis in law" for withholding the requested documents. *See Tax Analysts*, 965 F.2d at 1096. This final entitlement factor evaluates "'whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *McKinley*, 739 F.3d at 712 (quoting *Davy,* 550 F.3d at 1162) (internal quotation marks omitted);

*see also Judicial Watch, Inc.*, 878 F. Supp. 2d at 237.[10]  As noted, "[i]f the Government's position is correct as a matter of law, that will be dispositive.  If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus."  *Davy*, 550 F.3d at 1162 (citation omitted).  In response to the criticism that "evaluat[ing] the government's nondisclosure decisions will open the floodgates by transforming every motion for attorney fees into a mini-trial on the merits of the underlying FOIA claim," the D. C. Circuit has acknowledged as "undeniable that considering the merits of an agency's nondisclosure decision will frequently complicate the adjudication of motions for attorney fees."  *Brayton*, 641 F.3d at 528.

The defendant claims that this factor does not weigh in the plaintiff's favor because the SEC "acted reasonably in initially withholding the records because the produced records contain, in part, attorney-client communications from Staff to the Commission."  Def.'s Opp'n at 11–12.[11]  The plaintiff counters that the defendant had no legal basis for withholding the records because, first, the documents were eventually disclosed and, second, at least part of the records

---

[10] Judge Kavanaugh has identified the fourth factor regarding the reasonableness of withholding documents as "the one factor from the current four-factor standard that makes some sense in the FOIA context" because "it discourages a federal agency from using its superior administrative and litigation resources to unfairly wear down meritorious FOIA plaintiffs."  *Morley*, 719 F.3d at 692–93 (Kavanaugh, J., concurring).

[11] In fact, the plaintiff's original request expressly asked for documents from "the SEC staff to the Commissioners in the matter . . . that indicate that by vote the Securities and Exchange Commission authorized a formal investigation of Michael Lauer and the filing of a civil complaint against him."  Def.'s Opp'n, Ex. A.  The plaintiff narrowed his request in his administrative appeal and in this lawsuit to "documents that describe or reflect the collective vote of the Commissioners of the Securities and Exchange Commission that authorized both a formal investigation of Michael Lauer and the commencement of a civil action against" him.  Def.'s Opp'n, Ex. C.  "As narrowed, the appeal does not seek to learn the votes by the individual Commissioners, just the date and the vote."  *Id.*  Even though the plaintiff's modified request was more specific, as explained below, the defendant still had a reasonable basis in law to justify the withholding.

were "covered by FOIA" because, as the defendant concedes, they only contained attorney-client communications "in part."  Pl.'s Reply at 3.[12]

Contrary to the plaintiff's assertion, the fact that the SEC exercised its discretion to release requested records does not demonstrate Lauer's entitlement to attorneys' fees.  The D.C. Circuit fully addressed this circumstance in *Brayton*.  There, as here, the agency initially withheld the requested document but, subsequently, after initiation of the lawsuit, agreed to declassify and release the document.  *See* 641 F.3d at 523–24.  The plaintiff sought attorneys' fees, arguing that "fee awards should not be foreclosed despite the fact that the government was correct as a matter of law to withhold the documents he requested," because "this effectively nullifies the statute's lenient 'not insubstantial' standard, replacing it with the stricter requirement that a plaintiff's claim be correct on the merits to qualify for an award."  *Id*. at 526.  The Circuit rejected this argument, noting "the irony that awarding fees to plaintiffs in [plaintiff]'s situation might prod government agencies to be less rather than more transparent."  *Id.* at 528.  Instead, the rule applied in this Circuit avoids penalizing agencies that "choose to relent for the sake of transparency and release requested documents without exposing themselves to monetary penalties: the fact that their initial nondisclosure decision rested on a solid legal basis creates a safe harbor against the assessment of attorney fees."  *Id*.  Otherwise, "agencies with legal authority to withhold requested documents would have no such safe harbor" and "might hesitate to release the documents, since doing so would risk creating a 'substantially prevail[ing]' plaintiff who might be entitled to fees."  *Id*.

---

[12] The plaintiff raises no argument that the defendant should have turned over "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt under this subsection."  *See* 5 U.S.C. § 552(b); *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 27 (D.D.C. 2011) ("In withholding a responsive record under one of FOIA's enumerated exemptions, an agency must nevertheless disclose any non-exempt information that is 'reasonably segregable' from the responsive record.").  Accordingly, the Court does not decide whether the defendant correctly withheld the entirety of the responsive documents in response to the plaintiff's initial request.

In this case, the defendant has established a colorable basis in law for denying the plaintiff's FOIA request under the belief that Exemption 5 applied since the requested records contain "attorney-client communications from Staff to the Commission" and include details of internal meetings and deliberations. *See* Def.'s Opp'n at 11–12; Pl.'s Mot. Exs. B, C; *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (noting that the "deliberative process covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'") (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)) (internal quotation marks omitted); *Checkosky v. SEC (In Re Checkosky)*, 23 F.3d 452, 489 (D.C. Cir. 1994), *superseded on other grounds by rule*, 17 C.F.R. § 201.102(e)*, as recognized in Marrie v. SEC*, 374 F.3d 1196, 1202 (D.C. Cir. 2004) (recognizing that "[u]p to the point of announcement, agency decisions are freely changeable" and that "votes are not final until decisions are final; and decisions do not become final until they are released") (internal quotation marks and citations omitted); *Lawrence v. Van Aken*, 4:03-CV-20, 2004 WL 228989, at *7 (W.D. Mich. Jan. 14, 2004), *aff'd*, 316 F. Supp. 2d 547 (W.D. Mich. 2004) ("The deliberative process privilege would certainly protect from disclosure . . . minutes or other documents reflecting the deliberations and votes of Commissioners.").[13]  Moreover, the plaintiff has failed to demonstrate that the agency was "recalcitrant in its opposition to a valid claim or otherwise

---

[13] The plaintiff summarily argues that "an agency decision is not part of the deliberative pre-decisional process," relying on *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87–88 (1973), *superseded on other grounds by statute*, 5 U.S.C. § 552(b)(1), *as recognized in CIA v. Sims*, 471 U.S. 159, 189 & n.5 (1985), and *Bristol-Meyers Co. v. FTC*, 598 F.2d 18, 25 (D.C. Cir. 1978), for support.  Pl.'s Mot. at 13–14.  Both these cases are inapposite.  In *Mink*, the Supreme Court found that Exemption 5 did not apply to "purely factual material contained in deliberative memoranda and severable from its context."  410 U.S. at 88.  That is not the case with the documents here, which contain recommendations and internal deliberations.  *See* Pl.'s Mot. Exs. B, C.  *Bristol-Meyers* is also inapplicable. In that case, the D.C. Circuit held that a "negative" decision, that is, one which "has the practical effect of disposing of a matter before the agency is 'final' for purposes of FOIA," and may have to be disclosed if it is "accompanied by a written explanation."  598 F.2d at 25 & n.13.  This is inapplicable to the documents at issue here, which pertain to a then-ongoing investigation, not a final adjudication "disposing of the matter."  *Id.*

engaged in obdurate behavior." *See Judicial Watch, Inc.*, 878 F. Supp. 2d at 237–38 (quoting *Davy*, 550 F.3d at 1162) (internal quotation marks omitted) (finding that "reasonableness" factor weighed in neither party's favor where agency had not fulfilled its burden but that plaintiff had also failed to argue that agency was recalcitrant or obdurate).

Thus, the fourth and final factor weighs strongly, if not dispositively, against awarding the plaintiff attorneys' fees. Since the last three factors strongly weigh against Lauer, the plaintiff has not demonstrated that he is entitled to an attorneys' fees award.[14]

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that, although the plaintiff's client, Michael Lauer, is eligible for attorneys' fees, he is not entitled to this award of attorneys' fees because the plaintiff acknowledges Lauer's commercial and personal interests in obtaining the requested documents, and the defendant's initial withholding was reasonable.[15] Accordingly, the plaintiff's motion for an attorneys' fees award is DENIED. An appropriate Order accompanies this memorandum opinion.

Date:  February 14, 2014

_____
BERYL A. HOWELL
United States District Judge

---

[14] In addition to attorneys' fees, the plaintiff also seeks to recover the costs of this lawsuit, under Federal Rule of Civil Procedure 54(d)(1), which provides "for the award of costs against the losing party as a matter of course." *Haarhuis v. Kunnan Enters., Ltd.*, 177 F.3d 1007, 1015 (D.C. Cir. 1999). Such costs, "other than attorneys' fees," may be imposed against the United States and its agencies "only to the extent allowed by law." FED. R. CIV. P. 54(d)(1). The payment of costs by a federal agency to the prevailing party is authorized under the FOIA. *See* 5 U.S.C. § 552(a)(4)(E) (authorizing assessment against the United States of "reasonable attorney fees and *other litigation costs* reasonably incurred") (emphasis added). Since Lauer is not a prevailing party for purposes of an attorneys' fees award, he is likewise not entitled to payment of his costs.

[15] Since Lauer is entitled to no attorneys' fees, the Court need not resolve the defendant's contention that any fee award should be offset by the outstanding civil judgment against Lauer. Def.'s Opp'n at 6–7.